EDWARD P. BAKER, Respondent, *v.* ELIZABETH G. COOPER and Others, Appellants, Impleaded with PEOPLES SAVINGS BANK OF YONKERS and DAVID FRANK, Defendants.

Second Department, June 9, 1922.

Liens — equity — action in equity to recover for breach of contract by landowner granting to real estate agent exclusive control and sale of property and to impress equitable lien on said property — agent to have one-half of net over incumbrances — sale by owner directly to persons having knowledge of agreement — owner non-resident and financially irresponsible — equitable lien properly impressed on land — judgment not against evidence — plaintiff not guilty of fraud — fraud by purchasers — no adequate remedy at law.

A real estate agent, who had been managing certain real estate, collecting the rents and keeping the property in repair, and who had expended his own money for the purpose of carrying the property, who entered into an agreement with the owner whereby she agreed that for six months the agent should have the exclusive control and sale of the property, and that in lieu of commissions he should have one-half of the net return on the sale of the property after all incumbrances had been paid thereon, may maintain an action in equity against the owner and persons to whom she subsequently conveyed without the knowledge of the agent, to recover the amount that he would have received if the sale had been made through him and to impress an equitable lien upon the property, where it appears that the owner is a non-resident and is financially irresponsible; that the purchasers of the property purchased with full knowledge of the agreement and the agent's rights in the property; that the sale was made to persons who opened negotiations with the agent and for a price and upon terms substantially the same as those offered by the agent, and that as a result of the sale the plaintiff was deprived of his opportunity to reimburse himself from the proceeds for the amount of money he had expended in caring for the property.

The judgment in favor of the plaintiff is not against the weight of the evidence and the defendant did not sustain his claim that the plaintiff had been guilty of dishonesty in his management of the property and was, therefore, not entitled to equitable relief.

Under the agreement and the evidence the property clearly was intended to be security for the payment to the agent of the debt which the owner owed to him on account of moneys expended in the management of the property, and

for his share of the net return which he was to receive as compensation for his management of the property and for the sale thereof and, therefore, the agreement created an equitable lien upon the property in the agent's favor to which the purchasers were all bound by reason of their knowledge of it.

Furthermore, it appears that there was a willful and deliberate fraud practiced on the plaintiff by the purchasers with the intention of defeating whatever rights he had under the agreement.

The plaintiff did not have an adequate remedy at law, for, if he had sued at law, by the time he would have procured a judgment against a financially irresponsible owner, a non-resident, the property in question might have been transferred several times, and, furthermore, the parties affected by the judgment here are the parties who perpetrated the fraud with a knowledge of the plaintiff's rights.

REARGUMENT of an appeal by the defendants, Elizabeth G. Cooper and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 24th day of November, 1920, upon the decision of the court rendered after a trial at the Westchester Special Term. (See 201 App. Div. 855.)

*F. X. Donoghue* [*Edward G. McAnaneny* with him on the brief], for the appellant Elizabeth G. Cooper.

*Morris L. Rosenwasser,* for the appellant Max Cohen.

*Adrian M. Potter,* for the appellant Morris Moretzky.

*Humphrey J. Lynch,* for the respondent.

MANNING, J.:

The plaintiff, Edward P. Baker, was a real estate broker and agent in the city of Yonkers, N. Y., and the defendant Elizabeth G. Cooper was the owner of certain real estate known as Nos. 174, 178 and 180 Riverdale avenue, Yonkers, N. Y. The plaintiff, Baker, had been handling the property of the defendant Cooper prior to December 17, 1919, and at this time and for a long time prior thereto the property in question was heavily incumbered by mortgages, upon which interest had accrued and had not been paid, and certain arrears of taxes were also due and unpaid. The mortgages in question were held or controlled by the defendant Peoples Savings Bank of Yonkers, and amounted to $39,000, and the interest, taxes and water bills due thereon aggregated about $8,568.33 at the time of the sale hereinafter referred to, and prior thereto the bank had constantly threatened foreclosure. The plaintiff had an office in Yonkers, and the defendant Cooper lived at Salisbury, Conn. In and about the month of December, 1919, the defendant Cooper, being anxious to dispose of the property and rid herself of the responsibilities of carrying the same and the consequences of a pending foreclosure by the bank and a possible deficiency judgment against her, entered into an agreement

with the plaintiff, by the terms of which the plaintiff was to have the exclusive management and control of the property owned by her for a period of six months; he was to exert every effort to effect a sale for an amount sufficient to cover the .incumbrances thereon, and out of the net proceeds over and above the incumbrances, she agreed that plaintiff should have one-half, as compensation for his activities theretofore had in the management of the same and the sale thereof if a sale was effected. The plaintiff had been previously taking care of the property for the defendant Cooper, collecting the rents for her, keeping the property in repair, and after making deductions for repairs necessary for the upkeep of the property, which appears to have been in poor condition, turned the balance over to the defendant Cooper. He had also made expenditures of his own money for the purpose of carrying the property; and so it was finally agreed that it would be best to sell it. Thereupon the agreement which is the basis of this suit was entered into, at the time of the making of which the defendant Cooper explained that she had arranged with the bank that thereafter the net proceeds from the rents collected by the plaintiff should be turned over to the bank instead of to her, as had been previously done by the plaintiff. The agreement between them is as follows:

" Mrs. Elizabeth G. Cooper, being the owner of Nos. 174, 178 and 180 Riverdale Avenue, Yonkers, N. Y., agrees with Mr. Baker for the term of six months from date hereof that Mr. Baker shall have the exclusive management of the property until the sale of the property or until the expiration of said six months. Mr. Baker is to apply all of the income of the property to the payment of the encumbrances upon the property. The said income is to be applied for the necessary repairs, then to the payment of interest on mortgages, then to the payment of taxes and water charges. This agreement is subject to any other agreement which Mrs. Cooper has made with the People's Savings Bank of Yonkers relative to the control of the property. The said Baker agrees to obtain the best price possible for said premises and the net amount realized if the said premises are sold during said period shall be divided equally between the parties hereto, but the said Baker shall not have any claim for commissions upon the sale of the property but shall be entitled to commissions on the rental as hereinbefore mentioned. Said premises are not to be sold for less than the amount of the encumbrances upon the premises.

" ELIZABETH G. COOPER     [L. S.]
" EDWARD P. BAKER          [L. S.] "

Plaintiff continued in the management and control of the property in accordance with this agreement, collected the rents, and, after deducting the amount of necessary repairs, rendered monthly statements to the bank and turned over to the bank the balance to be applied to the payment of the interest and taxes then long overdue. He made efforts to sell the property, and in February, 1920, the defendant Cohen became interested in the purchase of it. Then the defendant Moretzky came into plaintiff's office and said he had a purchaser for the property, one David Frank, another defendant herein; and in the latter part of February, 1920, Moretzky brought Frank to the plaintiff as a prospective purchaser, and they asked the price, which was placed at $50,000. At this time plaintiff gave Moretzky and Frank a memorandum of the bills for interest and taxes against the property, and it was agreed that the purchase should be made on the basis of $50,000, with the privilege to the plaintiff of collecting the rents until May, 1920, the defendants agreeing to pay one-half of the taxes, so that in reality the purchase price agreed upon was $51,900. It was further agreed that Moretzky should receive $400 as a commission. They then offered plaintiff a check for the purpose of binding the bargain, but the plaintiff told them he would have to communicate with the defendant Cooper and explain the exact situation to her before he would accept the arrangement. On February 16, 1920, he wrote to the defendant Cooper that he had an offer of $50,000 for the property and was about to consummate a sale thereof, and requested her to come at once to Yonkers to the end that the details of the transaction might be gone over with her, with a view of closing the deal. Thereafter the owner, Cooper, on February 18, 1920, wrote to the plaintiff expressing her satisfaction with the arrangements, and said: " If you cannot get $1,000 out of the sale see if you can get $500.00 and I shall have $500.00. I think it would be best to close the deal; " and on February 20, 1920, she sent a telegram to the plaintiff informing him that she would be at his office in Yonkers on Monday, February twenty-third, at two-thirty P. M. In the meantime, between February 18 and February 21, 1920, the defendant Moretzky called at the home of Mrs. Cooper's mother at Salisbury, Conn., in an effort to get in touch with the defendant Cooper, having in some way learned her address, but Mrs. Cooper was at Farmington, Conn., at the time, whereupon her mother telephoned to the defendant Cooper that there was somebody there inquiring about the property. The defendant Cooper then proceeded to Yonkers, she did not visit the plaintiff, Baker, but went directly to the office of the Peoples Savings Bank of Yonkers, where she met

Moretzky, who had called at her mother's home in Salisbury, and there consummated the deal directly with the bank and Moretzky and delivered a deed to the bank on February 21, 1920. The bank subsequently deeded the property to the defendants Cohen and Frank. Mrs. Cooper, the defendant, testified that prior to the time of her conversation with Moretzky she was on good terms with Baker, the plaintiff, but had changed her mind about him. She did not call at plaintiff's office on February twenty-third, as promised, and plaintiff learned on February 24, 1920, that she had been in Yonkers and given a deed of the property. She conveyed the property to the bank on February twenty-first, and the bank conveyed to Frank and Cohen on March 1, 1920, the same parties who had agreed with Baker to buy the property, and who knew all about the agreement between him and the defendant Cooper and of plaintiff having full charge and management of the property. The terms of sale were substantially the same as they had agreed with Baker, except that the defendant Moretzky, instead of receiving a commission of $400, received $1,200, and the defendant Cooper received the full amount of the balance of the purchase price, $1,306.23, what was left after the payment of incumbrances. The plaintiff was thus entirely eliminated from the situation, although the evidence discloses that he had spent out of his own pocket $968.38, and obligated himself to pay the amount of repairs in the sum of $613.57, which it had been customary for him to do prior to and subsequent to the written agreement sued upon, in order to avoid foreclosure and in order to preserve and protect the defendant Cooper's interest in the property. Thus, through the scheme of the defendants Cooper, Cohen and Frank, the purchasers, and the broker, Moretzky, they cut out from consideration in the sale any provision for the repayment of the money expended by plaintiff, and by statements and representations made to Cooper and the bank regarding alleged mismanagement of the property by plaintiff, which they failed to sustain on the trial, they entirely disregarded the agreement, which they all knew of, disregarded plaintiff's rights and expenditures, and sold the property for practically the same figure which they had agreed to pay him, although his charges and expenditures against the property were just charges and were so properly found by the trial court. The defendant Cooper, instead of getting $500, which she was willing to take to get out of the situation, as evidenced by her letter of February eighteenth, over and above incumbrances, or if more were realized, one-half of the net amount realized on a sale, received through the deal direct, ignoring the plaintiff, the sum of $1,306.23, and the broker, Moretzky, received

$1,200 instead of $400, as the plaintiff claims he had agreed to take. All of these facts, in my opinion, are borne out by the testimony.

The plaintiff, immediately upon finding out the situation, on February 26, 1920, brought his action in equity, by service of process on the defendants. This was prior to the delivery of the deed to the defendants Cohen and Frank. The bank deeded the property to them subsequent to the action and the filing of a *lis pendens* against the property. The action was tried, and the trial court found that the plaintiff was entitled to one-half of $1,830.52, or $915.26, and a further amount of $675.71, being the excess of his disbursements over his receipts, or an aggregate sum of $1,590.97, and made the following findings:

" 16. That by reason of the corrupt scheme of the defendants, Cohen, Frank, Moretzky and Cooper, the plaintiff herein has been deprived of his opportunity of collecting said sum of One thousand Five Hundred and Ninety and 97/100 ($1,590.97) Dollars, for the reason that the defendant Cooper is a non-resident of this State, and is financially irresponsible, and the plaintiff will be unable to recover said sum from the defendant Cooper unless he be given equitable relief by having the property impressed with a trust and a lien for the said sum of One Thousand Five Hundred Ninety and 97/100 ($1,590.97) Dollars which he has been deprived of by reason of the wrongful conduct of the aforesaid defendants.

" 17. That the plaintiff herein has in all his dealings with the defendant, Elizabeth G. Cooper, kept a true and honest account of his transactions with her and has acted in every wise honorably and fairly with her."

The court entered judgment dismissing the complaint against the Peoples Savings Bank of Yonkers, and also dismissing the counterclaim of the defendant Cooper. The charge that the plaintiff Baker had not kept a true and accurate account of his transactions in regard to the property was also dismissed, for the reason that there was no proof to sustain the same. The court decreed that the plaintiff have a lien upon the property for $1,590.97, and appointed a referee to sell the premises, and further decreed that in the event that there was not realized a sufficient sum to liquidate the plaintiff's claim, the plaintiff should be entitled to a deficiency judgment for the balance remaining unpaid, as against the defendants Cooper, Frank, Cohen and Moretzky.

All the facts as found by the trial court are amply sustained by the evidence. The plaintiff's rights were violated by the action of the defendants Cooper, Cohen, Frank and Moretzky, the evidence showing that they knew of the agreement between the plaintiff

and the defendant Cooper; and hence I think the court was right in impressing a lien upon the property and directing a sale thereof.

The defendants urge that the judgment is " against the weight of evidence; " and that " The plaintiff does not come into court with clean hands." I will say, regarding this claim, that the plaintiff clearly preponderates in believable evidence, and certainly showed himself to be honest in his transactions with regard to the management of the property in question. The only other points urged worthy of consideration are these: " The court will not impress an equitable lien upon real property, in the absence of proof of a clear intention that the premises should ' be held, given or transferred as security for the obligation of the contract; ' " and that " The plaintiff had adequate remedy at law and therefore his complaint should have been dismissed."

I do not believe there is any merit in either point. The property, under the agreement, was given to the plaintiff to manage, hold and control, and if possible to sell the same for an amount over and above the incumbrances by way of mortgage, interest and taxes; and the plaintiff had an *exclusive* right for the six months' life of the contract to sell the property, and also was given a share in the profits of the sale. The facts clearly show that prior to the written agreement there had been threatened a foreclosure proceeding which had been prevented up to that time; and that Mrs. Cooper and the plaintiff had conversations as to what was advisable to do in order to avoid foreclosure, and that up to that time through the efforts of the plaintiff a foreclosure had been avoided, but in view of the increasing incumbrances the situation was becoming more difficult; and in order to pay the plaintiff what was due him for expenditures on the defendant Cooper's behalf in the management of the property, and his commissions for collecting the rents and management of the same, and in order to relieve the defendant Cooper of the embarrassment of the situation, the defendant agreed with the plaintiff that he should take over full and exclusive charge and endeavor to avoid foreclosure and sell the property for a sum not less than the amount of the incumbrances, but for the best price available, the net amount to be divided equally between them. And hence it was the intent that the share the plaintiff was to receive was to recompense him for his management of this particular property. This property, under the agreement and the evidence, clearly was intended to be security for the payment to the plaintiff Baker for the debt and obligation which the defendant Cooper owed to him. This situation, under the decisions as I read them,

created an equitable lien upon the property in plaintiff's favor, to which the defendants, appellants, were all bound by reason of their knowledge of it. The property itself was particularly identified with sufficient clearness in the written agreement, and under it the plaintiff Baker was given the " exclusive management of the property until the sale of the property or until the expiration of said six months." Further, it also appears from the evidence that there was willful and deliberate fraud practiced upon the plaintiff by the defendants, appellants, with the intention of defeating whatever rights he had under the agreement.

I do not think there is any merit in the other point, that the plaintiff had an adequate remedy at law. The facts clearly establish that if he had sued at law, by the time he would have procured a judgment against the defendant Cooper, a non-resident, the very property could have been transferred several times; and the parties affected by the judgment here are the parties who perpetrated the fraud, with a knowledge of the plaintiff's rights; and the plaintiff would have a judgment against a person of doubtful responsibility, the defendant Cooper having no other property in Yonkers. Under the circumstances, application for equitable relief was proper. (See *Mills* v. *Bliss*, 55 N. Y. 139, 142.)

For a general discussion of the principles of an equitable lien, which I think sustain the views heretofore submitted, see 3 Pom. Eq. Juris. (3d ed.) §§ 1233, 1234, 1235; *Smith* v. *Smith* (125 N. Y. 224); *Perry* v. *Board of Missions, etc., of Albany* (102 id. 99). (See, also, cases cited in *Zeiser* v. *Cohn*, 47 L. R. A. [N. S.] 190; Snyder's Lien Law [6th ed.], 243, citing *Underhill* v. *Jordan*, 72 App. Div. 71; 2 Story Equity [13th ed.], § 1237.)

I think the court below was clearly right in its findings and conclusions in all respects, and I, therefore, recommend affirmance, on reargument, with costs.

Present — BLACKMAR, P. J., KELLY, JAYCOX, MANNING and KELBY, JJ.

Judgment unanimously affirmed on reargument, with costs.