M. J. Moss, Jr., v. Mamie J. Sperry, Henrietta A. Nelson, Bessie L. Keeling, Edgar J. Sperry, Mary S. Blake, Sarah S. Knox, Annette S. Stewart, Ferdina S. Harris, Wade R. Sperry and Mark Dodd.

191 So. 531

Division B

Opinion Filed October 17, 1939

302

*George P. Garrett,* for Appellant;

*W. A. Pattishall* and *Hugh Akerman,* for Appellees.

BROWN, J.—The appeal in this case was taken from two orders of the circuit court, one dismissing the original bill of complaint, and the other dismissing the amended bill. This suit was brought by a real estate agent to enforce against real property belonging to the vendors and the proceeds of the sale thereof and the interest of the purchaser in said property an equitable lien for his commission for services rendered the vendors in connection with the sale of the property.

The amended bill alleged that the defendant owners by and through their agent Sperry renewed a listing with the plaintiff as a broker of certain described property in Orange County, Florida. The terms of the listing were that the broker was to find a buyer, ready, able and willing to buy said property for the total sum of $15,000.00, a down payment of $5,000.00 cash and the terms of payment of the balance of the purchase price to be arranged to suit the purchaser, allowing up to five years to pay off the balance, interest to be paid at the rate of 6 per cent per annum, and the plaintiff to be paid a commission of 10 per cent of the sales price out of the first monies paid by the purchaser on the purchase price. Thereafter, the plaintiff advertised said property for sale and through his efforts found one Mark Dodd, who was made a defendant in the suit, as a prospect for the purchase of said property.

It was further alleged that the said Mark Dodd, after receiving from the plaintiff all the information he demanded with reference to the said property, including the name of the non-resident agent of the owners and the name of the

local agent of the owners, ignored the plaintiff and dealt directly with the non-resident agent of the owners. That before any contract was made or title passed, the plaintiff notified the said defendant owners by and through their non-resident agent, and their agent Sperry, and their local agent McPherson, that he had produced the said Mark Dodd as a prospective purchaser and demanded that the defendant owners protect him for his stipulated broker's commission in accordance with the terms of said listing. That thereafter said defendant owners entered into a valid and now subsisting written and enforceable contract with Mark Dodd to sell said real property to him at a price of $11,500.00 cash, and that Dodd paid a valuable consideration, earnest money, to said defendant owners for the contract and is not in default under the contract. That plaintiff's commission on said purchase price is the sum of $1,150.00. That the legal title has not yet passed from the defendant owners to said purchaser, and that said purchaser had not paid the owners any part of the purchase price save the earnest-money down payment, which was a small sum, the specific amount of which was not known to plaintiff. That said owners now disclaim any liability to plaintiff for the payment of plaintiff's earned broker's commission.

It is further alleged that Dodd knew at the time he consulted plaintiff that plaintiff was a registered real estate broker having the property listed with him and would be entitled to a 10 per cent broker's fee upon a sale of the property from the purchase price thereof, and that it was the intention of Dodd, in dealing directly with the owners and ignoring plaintiff, in which purpose and intention the owners joined, to avoid the necessity on the part of the owners, in case of a sale, of paying the plaintiff's commission; that this purpose originated in the desire of the purchaser to discount

the purchase price by the amount that would be payable to plaintiff if the deal were made by the purchaser directly through the plaintiff with the owner. That it was also the purpose and intention of the owners, in dealing with said purchaser directly, and not referring him to the plaintiff, after they knew the plaintiff had procured said purchaser, in which purpose and intention the purchaser joined, to attempt to evade and avoid the necessity of paying plaintiff his agreed commission of 10 per cent of the sale price, which the defendant owners had obligated themselves to pay him in case he procured a purchaser.

It is further alleged that the defendant owners are non-residents of the State of Florida; that there is no person in the State service of process upon whom would bind the owners in any suit at law or in equity, and that plaintiff cannot recover a valid judgment at law against the defendant owners because he cannot make personal service of process upon them. That said owners have no other property in Orange County or in the State of Florida out of which plaintiff can enforce his claim for commission if the said real property and the proceeds of the sale thereof to Dodd are acquitted of liability to the plaintiff for said commission. That the defendant owners and defendant purchaser knowingly combined, conspired and colluded to consummate said sale in such a manner as to evade, and for the agreed purpose of evading, the payment of plaintiff's commission, and that to permit them to consummate such a deal without paying plaintiff his earned commission would be to permit said defendants to consummate a fraud upon plaintiff.

The amended bill also alleges that the defendant owners and defendant Dodd each have an interest in said described real property; that the defendant owners as vendors hold the title in trust for the purchaser until he pays the purchase

price, and the purchaser holds an equitable title subject to the payment of the purchase money; that the owners and Dodd each have an interest in the unpaid purchase money which Dodd contracted to pay the owners; and that therefore the said several interests of the defendant owners and Mark Dodd, both in the purchase price and in the land, are in equity subject to the claim of plaintiff on the real property involved and the funds arising out of the sale thereof, to the extent of his commission of $1,150.00.

Plaintiff sought a decree of the court declaring such equitable lien in his favor on the proceeds of the sale to the extent of plaintiff's interest therein, and requiring the defendants to secure to the plaintiff his interest in the said proceeds and requiring defendant Dodd to pay plaintiff his one-tenth interest in said proceeds, namely $1,150.00, or in the alternative a decree that the several interests of said several defendants, both the owners and said Dodd, in the property, out of the sale of which said proceeds are derivable, may be subject to an equitable lien in favor of plaintiff to the extent of his interest in the lands, or the proceeds of the sale thereof, and that the court enforce such lien.

Then follow the allegations, mostly argumentative in nature, to the effect that the equitable basis for the enforcement of such a lien consists in the fraud wherein the owners and the purchaser conspired and colluded to make such sale in such manner as to defraud the plaintiff, and that the remedy of attachment is not available to plaintiff because the beneficial ownership of the property is in Dodd and the legal title is in the owners in trust for Dodd as security for the payment of the purchase price, and that plaintiff has no right against Dodd which can be enforced by attachment. That plaintiff does have a right against the defendant owners

which can be enforced by attachment, but that they do not own a beneficial interest therein, or any title to any other property subject to attachment within the jurisdiction. That the remedy of garnishment is not available to plaintiff because if he has such remedy it is only against the owners by garnishment writ served on Dodd, and that although Dodd has agreed to pay the owners under his purchase contract, he does not owe defendant owners until they deliver marketable title to the lands, which they have not done and cannot do while this suit is pending, and that defendant Dodd has not now any goods, money, chattels or effects of defendant owners in his possession or control subject to writ of garnishment.

We have only reviewed the amended bill, because it presented the plaintiff's case more strongly than the original bill. The defendant owners, and also the defendant Dodd, each filed motions to dismiss the amended bill upon the grounds that there was no equity therein, that plaintiff had a complete and adequate remedy at law, that a real estate broker is not entitled to a lien for his commission upon property sold by him or listed with him, and that the defendant Dodd is an improper party. The circuit court granted both motions and dismissed the amended bill. Hence this appeal.

Counsel for appellant cites Zirkle v. Hendon, 180 Ala. 209, 60 So. 834; Hendon v. Zirkle, 201 Ala. 171, 77 So. 697 (which latter case was the second appearance of and followed the case first cited); Moss v. Thomas (Ala.) 117 So. 648, which case cites the case of Zirkle v. Hendon, *supra*, with approval, though the factual situation in that case was different; Frances v. Wells, 2 Colo. 660; Ann. in 58 A. L. R. 1497; Baker v. Cooper, 194 N. Y. Supp. 726,

201 App. Div. 639; Davis v. Huff (Tex.) 288 S. W. 267; also Ann. in 47 L. R. A. (N. S.) 186-190.

None of these cases are quite in point here. They are interesting, and by way of analogy cast some light on the general subject. In this case, however, even the owners themselves had no vendor's lien, as they had not conveyed the property. And there was. no agreement between the purchaser and the broker, nor between the owner and the purchaser, nor between all three, that the *purchaser* would pay the broker's commission out of the purchase price. The terms of the listing of the property by the owners with the' broker, which was done before any purchaser was found, were, as alleged in the bill, that in case of sale the broker's commission was to be paid out of the first monies paid by the purchaser on the purchase price. Thus this agreement was between the owners and the broker alone. Though the purchaser when found was made acquainted with the situation, he was not a party to this agreement, nor is it anywhere alleged that said purchaser ever promised or agreed to pay the plaintiff's broker's commission, as a part of the purchase price, or otherwise.

In the opinion of Mr. Chief Justice DOWDELL in the above cited Alabama case of Zirkle v. Hendon, which is a model of judicial brevity and lucidity, it was said:

"This bill is for the enforcement of a vendor's lien on land. The land in question was the property of the Lost Creek Coal & Mineral Land Company, a corporation. By a contract and agreement with the said company, the appellants, Zirkle and Moore, effected a sale of the land to the appellee Hendon, at and for the purchase price of $20.00 per acre. The appellants were to be paid $5.00 per acre for their services in effecting the sale. It was understood and agreed by and between all the parties, the coal company,

the appellants, and the purchaser Hendon, that Hendon should pay, of the purchase price of the land, $5.00 per acre to the appellants, and the balance of the consideration money, $15.00 per acre, to the coal company. Hendon went into possession of the land under this agreement and understanding, and subsequently paid to the coal company the $15.00 per acre, their part of the purchase consideration of the land, and obtained a deed from the coal company, and is now in possession of the land, and refuses to pay the $5.00 per acre to the appellants." * * *

"Evidently the court, in sustaining the demurrers, did so upon the theory that the appellants had no interest in the land, and that the compensation they were to receive was merely a commission for services for effecting a sale of the land for the coal company, and not a part of the purchase consideration, and hence no vendor's lien could result. In this the court was in error. The bill expressly states that the $5.00 to be paid by the consent of the parties to appellants was part of the purchase price, and further-more emphasizes such averment by averring that the price to be paid for the land was $20.00 per acre, $5.00 of which was to be paid to the appellants, and $15.00 to the coal company, the owner of the land. If the purchase price is $20.00 per acre, and a part is to be paid to one person and a part to another, clearly one portion is as much a part of the purchase price as the other.

"The vendors lien exists and is enforced, not only where the consideration is to be paid to the vendor, but also where it is to be paid to a third person by or with his consent. 'Otherwise, contravening the intention of the parties, and violating equity and good conscience, the vendee would keep the land without paying the purchase money.' Carver v. Eads, 65 Ala. 190; Wilkinson v. May, 69 Ala. 33; Waller v.

Janney & Cheney, 102 Ala. 442, 14 South. 876; McCrory v. Guyton, 154 Ala. 355, 45 South. 658.  The lien having arisen under the agreement of the parties in favor of the appellant, the coal company, without the consent of the appellants, could not displace the same by subsequently executing an absolute conveyance to the purchaser Hendon, upon the payment by him to the coal company of the $15.00 per acre, its portion of the consideration money for the land.

"The coal company was properly made a party to the bill. The decree of the court will be reversed, and one will be here rendered overruling the demurrrs."

In the cited Colorado case of Francis v. Wells, *supra,* a broker who was employed by a vendor to sell land and who was to retain as his commission all over a stated price, was held to have a right to enforce a vendor's lien against a vendee who had promised to pay such commission.  In that case the court speaks of this fact.  The debt thus promised to be paid by the vendee was not strictly a debt of the vendor.  Indeed, the Colorado Court states that the vendor was under no obligation to pay the sum thus promised to be paid by the vendee to the broker.

In the New York case of Baker v. Cooper, above cited, a real estate salesman who had the exclusive right for six months by contract to manage and sell real property, getting one-half of all over and above encumbrances, and who found a purchaser ready and able to complete the transfer of the property, was held to have an equitable lien impressed on the property to enforce his being repaid for money expended by him out of his own pocket to prevent foreclosure proceedings and to pay taxes, when the owner, a financially irresponsible non-resident, colluded with the prospective purchaser and another broker to sell the property.  The Texas case of David v. Huff held that where an agreement

was made between the owner of the property, the purchaser and the broker who sold it, that part of the purchase price should be withheld and paid by the purchaser, instead of the owner, to the broker as commission, the broker had an equitable lien against the land which he was entitled to foreclose where the vendor had not waived his lien for the unpaid purchase price. The court based its decision upon the principle that where a part of the purchase price for a tract of land is the assumption by the purchaser of an indebtedness due to a third party who has no claim on the land, the vendor's lien arises in favor of such third party to secure such indebtedness. This was practically the holding in the Alabama case above quoted from.

In the Alabama case of Moss v. Thomas, *supra,* it was held that where there was an agreement between the owner and the agent by which the latter was to have, out of the purchase money for the sale of the owners' lots, all over and above a certain sum, the agent was entitled on the sale of the lots above the set price to assert and enforce a vendor's lien on the lots for payment of his commission as a part of the purchase money. In that case, the case of Zirkle v. Hendon, above quoted from, was cited as authority, so there was no intention manifested to depart from the principles laid down therein. The case of Zirkle v. Hendon was also followed in Shotts v. Scott, 192 Ala. 173, 68 So. 325. In said case of Moss v. Thomas the bill was filed by the purchaser against the owner and the broker, who it was alleged claimed a lien in the lots for his services as a part of the purchase price, and prayed the court to ascertain the balance due on the purchase price of the lots, which price included the broker's commission. and for specific preformance, and prayed that the claim of the broker be adjudicated and determined. It thus appears that plaintiff pur-

chaser in substance acknowledged that the broker's commission was a part of the purchase price which the purchaser was obligated to pay. The broker filed an answer which was treated as a cross bill in which he alleged that he was entitled to the payment of his commission as a part of the purchase price, being all of the agreed purchase price in excess of the set price named by the owner, and it was held that he was entitled to this relief and to the protection of the vendor's lien on the lots to the extent of his commission.

It will thus be seen, as above stated, that none of these cases are directly in point here, as supporting appellant's contention. Indeed, the case of Zirkle v. Hendon, above quoted from, would indicate that in order to entitle the broker to the protection of the vendor's lien, which equity implies to secure the payment of the purchase price after conveyance has been made, there must have been some obligation on the part of the purchaser to pay the broker's commission as a part of the purchase price, or to see that it was so paid. We cannot agree with the able counsel for the appellant that these above cited cases are authority for the proposition that where the broker is to be paid by the vendor his compensation out of the purchase price of the real property listed with him by the owner for sale, and a sale is made, the broker is entitled to a vendor's lien *pro tanto* upon the property for the amount of his commission. In the absence of any agreement by the purchaser to pay the broker's commission as a part of the purchase price, the purchaser can fulfill his entire obligation to the vendor by paying the full amount due on the purchase price directly to the vendor, thus completely discharging the vendor's lien, regardless of whether the vendor carries out his agreement to pay the broker's commission, or not.

In another Alabama case, Erswell v. Ford, 208 Ala. 101,

94 So. 67, cited by appellees, it was held that where the purchaser conspired with the owner to cause the breach of the latter's contract with the complainant real estate agent, no cause of action is made out against the purchaser; the consequence after all being only a broken contract, for which the party to the contract has his remedy by suing upon it. But the Court in substance held that this general rule is subject to an exception, that is where a party has been procured against his will or contrary to his purpose, by coercion or fraud, to break his contract with another.

In that case, the bill alleged that the complainant, as the agent of the owner, and authorized to sell for a specified commission, by his efforts had secured a purchaser for certain property; that the owner and purchaser had consummated a contract of sale, the conditions and amount of which, by concerted effort, and by withholding the papers from the records, they had kept the agent in ignorance. The Court held that on these averments the complainant agent was entitled to his commission on the purchase price, and could maintain a bill of discovery in equity to ascertain the facts essential to the recovery of a judgment, such discovery being appropriate as an auxiliary to proper relief.

But as to the contention of the agent Ford, on cross appeal in said case of Erswell v. Ford, *supra,* that, on account of the fraudulent conspiracy of Pizitz, the purchaser, with the owner, to cause a breach of the latter's contract with the agent, the complainant agent had an equitable lien on any balance due on the purchase price of the property remaining in the hands of the purchaser, and that since the bill averred that the owner was about to leave the country to take up her abode in foreign parts, equity ought to intervene to preserve the rights of complainant, the Court said:

"As to the second main proposition stated above, we are

unable to find any element of trust. Certainly no specific fund has been set apart by contract to be held, assigned or transferred as security for the obligation incurred by the defendant Pizitz, and the same consideration requires the rejection of the notion of an equitable lien; there is no charge created upon any specific thing or fund in possession of Pizitz by means of which the personal obligation of defendant Erswell arising from her contracts with complainant may be enforced in equity, but only a mere general liability enforceable by pecuniary judgment in favor of complainant."

It might be observed that the contract between the owners and the broker in that case provided that the agent should have the exclusive right to handle all sales and rentals of the owner's Birmingham property for a period of something over five years on a commission basis of two and one-half per cent.

Nor do our Florida cases give much comfort to appellant in his contention that he has, or is entitled to have the Court declare in his favor, an equitable lien in the nature of a vendor's lien, on the land, to the extent of his unpaid commision. Such relief was denied in King v. Wells, 100 Fla. 588, 130 So. 38. It was said in that case that: "A breach of contract for ordinary personal services is fully remediable at law."

And in Levitt v. Axelson, 102 Fla. 233, 135 So. 553, we held that a court of chancery cannot enter a personal decree for the payment of money claimed as a part of a broker's commission on the sale of real estate, where the plaintiff was not entitled to and was not granted the equitable relief prayed for, and the claim for a real estate commission was an entirely different cause of action which had been injected into the suit as a ground of relief additional to the

equitable relief sought. This decision was followed in Boyd v. Hunter, 104 Fla. 561, 140 So. 666, where the Court held that a chancery court could not enter a personal decree for a broker's commission and declare the same to be a lien upon the land sold, where no other relief was granted and the commission claim represented a cause of action additional to the other relief sought.

In other words, we have held that a bill in equity filed to enforce the payment of a broker's commission on a sale of real property, based on the theory that such unpaid commission *per se* is, or should be declared to be, a lien on the property sold, does not, in and of itself, present any matter which would justify the exercise of equity jurisdiction. And we adopt the view of the Alabama decisions to the effect that in order for the broker's commission to be held to be a part of the purchase price and *pro tanto* protected and secured by the vendor's lien (which is itself a form of equitable lien, 27 R. C. L. 568) the purchaser must have been obligated to the owner to pay such commission to the broker as a part of the purchase price. Ordinarily, and in the absence of some understanding or agreement to the contrary, the vendor alone is liable for the payment of the commission due to a broker employed by him to sell the property, or to find a purchaser ready, able, and willing to purchase, and the purchaser's only liability is to pay to the owner the agreed purchase price. 27 R. C. L. 536, 583, 584.

While there is no vendor's lien, strictly speaking, involved in this case (the owners not having conveyed the property) we have reviewed the cases cited by appellant because we think that, reasoning by analogy therefrom, they lead to the conclusion that appellant was not entitled to have the court below declare in his favor an equitable lien on the land involved in the transaction to secure the payment of his

commission. If, as appears here, the owners themselves had acquired no lien, but under the contract of sale still held the legal title, the broker, whose rights rest upon a contract with the owners, likewise had no lien. Nor are we fully persuaded that the facts afford a basis for the declaration of an equitable lien, as distinguished from a vendor's lien— which is itself a form of equitable lien. See Jones v. Carpenter, 90 Fla. 407, 106 So. 127; 17 R. C. L. 605, 37 C. J. 319.

We come now to consider whether the appellant is entitled to any other form of equitable relief. The bill alleges that the non-resident owners obligated themselves to pay the appellant broker a commission of 10 per cent of the sales price *out of the first monies paid by the purchaser* on the purchase price. A small sum, the amount of which was unknown to the broker, was paid by the purchaser as earnest money on the contract, but this was not paid to the broker, and of course did not, even in part, discharge the owner's obligation to him. It is further alleged that the broker produced a prospective purchaser, and acquainted the owners of this fact, notwithstanding which the prospective purchaser and the non-resident owners, through their agent, fraudulently conspiring to consummate a contract of purchase and sale in such a way as to evade payment of the broker's commission, ignored the broker and dealt directly with each other, and entered into a written and enforceable contract by which the owners agreed to sell Dodd the property in question for $11,500.00 cash, a small sum of earnest money being paid down, and the remainder to be paid upon the delivery by the owners to Dodd of a marketable title to the land. It is also alleged that the owners disclaim any liability to the plaintiff broker for his commission of $1,150.00.

The allegations of the amended bill are sufficient to show fraud on the part of the owners and the purchaser in au effort to prevent the broker from collecting his commission by going cver his head and consummating the sale and conveyance of the property between themselves without paying the broker any commission whatever, in spite of his contract with the owners that he was to be paid a commission of 10 per cent out of the first monies paid on the purchase price. If this scheme were allowed to be carried out, the only property of the non-resident owners within the jurisdiction of the court, or within the State, would have passed from them to the purchaser, who was not under contract to pay the broker's commission, and thus the broker would have been left practically without adequate remedy, because he could not secure a personal judgment against the non-resident owners, in an action at law for breach of contract, without personal service, and he could not attach the property to enforce his claim for unpaid commission against the owners after the owners had conveyed the same to a third party who had not assumed such obligation.

Fraud is one of the largest and most fruitful foundations of equity jurisdiction, and this bill *does* show fraud. In a general way, it may be said that equity considers that fraud includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, which are injurious to another, and by which an undue and unconscious advantage is taken of another. Harkness v. Fraser, 12 Fla. 336; Biscayne Realty & Ins. Co. v. Ostend Realty Co., 109 Fla. 1, 148 So. 560. Yet there are many cases of fraud that are effectually remediable in an action at law, where the defendant would have the right to trial by jury. On the other hand, there are many cases of fraud where equity jurisdiction is prac-

tically exclusive owing to the inability of the law courts to afford a suitable and adequate remedy. 10 R. C. L. 321.

While the mere injection of a charge of fraud may not necessarily give a court of equity jurisdiction in those cases where adequate and complete relief can be obtained in an action at law, there are cases involving fraud where the jurisdiction of courts of equity and courts of law are concurrent (10 R. C. L. 320), and the court first assuming jurisdiction may retain it to the exclusion of the other. But the general rule in this jurisdiction is that where the only relief obtainable on a bill of equity is one for which an adequate remedy at law exists, the bill will not be sustained. Montgomery v. Knox, 20 Fla. 372; Tampa & Gulf Coast R. Co. v. Mulhern, 73 Fla. 146, 74 So. 297; McClellan v. Marion Holding Co., 103 Fla. 646, 137 So. 887; Willis v. Fowler, 102 Fla. 35, 136 So. 358; See also 10 R. C. L. 316-31; 19 Am. Jur. 64. However, equity will lend its aid when there is not a complete and adequate remedy at law. Sommers v. Apalachicola Northern R. Co., 75 Fla. 159, 78 So. 25, and cases cited; Pepper v. Beville, 100 Fla. 97, 129 So. 334.

Appellee argues that appellant had an adequate legal remedy by way of attachment, or garnishment. As to garnishment; that lies only for a debt actually due at the time and not depending upon any contingency. Section 5284, Compiled General Laws; West Florida Grocery Co. v. Teutonic Insurance Co., 74 Fla. 220, 77 So. 209. Here the debt or commission is payable out of the first purchase monies paid, and as the purchase money in this case had not been paid (except some small negligible amount of earnest money) when the amended bill was filed, and apparently could not be demanded until the owners tendered a deed conveying a marketable title, garnishment at law would not

lie. As to attachment, the statute (5256, Compiled General Laws) does provide for attachment upon a debt not due whenever the debtor is (1) actually removing his property beyond the limits of the State, or (2) is fraudulently disposing of his property for the purpose of avoiding the payment of his just debts or demands, or (3) is fraudulently secreting his property for such purpose. On account of the contingent nature of this obligation, the commission being made payable out of a particular fund, to-wit: the first purchase monies to be paid by the purchaser on the purchase price, it is extremely doubtful that attachment at law would lie.

There is an old Florida case which throws some light on the situation here involved, and which shows that there is equity in this bill. We refer to the case of Broome, as Admr., v. Bisbee, 14 Fla. 21. In that case, which was an appeal from a final decree directing the payment by the administrator of $565.00 to Bisbee, the facts were that Smith, an attorney, was employed by one Myers to defend him against certain criminal charges pending before a military commission. Smith associated with him in the case Horatio Bisbee, and agreed to pay him one-half of the sums he should receive from Myers. Bisbee performed his part of the contract, rendering the service. Smith, during his lifetime, collected small amounts from Myers, but failed to divide with Bisbee. Before his death, Broome as Smith's administrator continued the suit and recovered judgment. Smith's estate was insolvent. When the decree was rendered, there was in the hands of Smith's administrator $1,131.00, being the proceeds of the judgment against Myers. Smith's administrator insisted that Bisbee was a general creditor, and not entitled to half of the funds derived from the judgment. The final decree directed the payment

o'f one-half of said sum of $1,130.00 to Bisbee. That decree was affirmed by this Court. Mr. Justice WESTCOTT, speaking for the Court, said:

"In this case Bisbee seeks to share in this particular fund, by virtue of peculiar equities attaching to his demand against the deceased intestate. A court of common law certainly cannot afford this relief, or act upon this particular fund. The sole question is: Does the case made entitle him to share in this particular fund, or does he occupy the standing of a general creditor of this insolvent estate, with no equity entitling him to a portion of this fund, resulting from his contract and the relations of the parties? Being entitled under the terms of the original contract to one-half of the moneys which Smith was to receive from Myers, the defendant in execution, he is clearly entitled, as against his legal representative or others having a beneficial interest in the estate, to the benefit of all liens which Smith may acquire for his security. Smith's claim for services has merged in the judgment, and upon the collection of the judgment Bisbee is clearly entitled to one-half of the specific funds. Smith's contract was not to pay Bisbee a certain amount at all events. It was to pay him one-half of the sums he would realize from Myers, as the services which Bisbee rendered were to enure to the benefit of Myers. After Bisbee has performed one-half, if not more, of the service which these identical funds represent, relying upon the capacity of Myers to pay Smith, and upon the express understanding that he was to share in them in that proportion, it would be palpably inconsistent with the plainest principles of right and justice to make him occupy the relation of a general creditor of an insolvent estate, thus permitting other creditors who had no such equity to take, as against him, a part of this particular fund. The general

creditor who relied upon the general credit of the intestate must look to his general assets. This particular creditor who has no claim upon the general assets, and who is entitled to no compensation unless something was realized from a debtor to the estate, and in that event to but one-half of the amount, will be given the right in equity to share in that fund without deduction, when the fund can be identified as in this case. If Smith or his estate had never realized anything from Myers, Bisbee could have claimed nothing. Having taken this risk for all purposes of loss, a court of equity, under the particular contract here disclosed, will make it effectual for the purposes of advantage.

"That Bisbee has a demand payable out of this particular asset cannot be denied. This is the contract set up and established by proof, indeed the administrator does not deny it. Where a legatee has a right to a particular fund, a court of equity will always secure the interest in his favor when the contest is between legatees, and where the superior rights of creditors do not intervene. In this case the demand is by contract. The particular asset is liable for this particular claim; the general assets are not, except conditionally in the event of an improper appropriation by the intestate. That is the case with the amounts collected by the intestate during his life. Respondent is a general creditor as to that, and there is no claim upon the judgment for that. The fund must be identified. These views are fully sustained by adjudicated cases. 2 Ves. Jr. 619; 1 Ves. Sr., 282; 1 Mar. Chy. Dec. 64; Story's Eq. 846, 730, 717."

In New York, it is held that a promise to pay out of a designated fund does not give the right to an equitable lien on such fund. Battery Place Commercial Corp. v. De-Willis, 183 App. Div. 569, 170 N. Y. Supp. 772, but in the

Florida case just quoted from, it was in effect held to the contrary, under the facts of that case.

In the case at bar, the "fund," that is, the purchase money out of which the owners were to pay the broker's commission on the sale of the real property, has not yet been paid, but if and when paid to the owners, the plaintiff broker would have an equitable interest therein to the extent of his commission. In order to secure the payment of this contingent debt or demand, if and when such purchase money is paid, and which debt the bill alleges the owners and purchaser have fraudulently conspired to avoid payment of if possible, we think, on the facts alleged here, the plaintiff broker is entitled to an equitable attachment of the lands involved against these non-resident owners, to secure the payment of his said commission out of this fund—this purchase money—if and when paid, such attachment to be dissolved when plaintiff's commission has been paid, or if and when it is made to appear to the court that the purchaser is not able to or for some reason will not, or cannot be compelled, to pay the purchase money which he has agreed to pay to the defendant owners. We hold that such remedy of equitable attachment is available on the facts alleged in the amended bill. See 4 Am. Jur. 554, 630, and cases cited.

Reversed and remanded for further proceedings not inconsistent with the foregoing opinion.

WHITFIELD, P. J., and CHAPMAN, J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.