Suit by Sol Megdall against Scott Corporation and others, as trustees and stockholders thereof to recover from the individual defendants a broker's commission owed to plaintiff by corporation prior to dissolution of corporation. From a decree of dismissal, plaintiff appeals.
Reversed with directions.
The allegations of an amended bill of complaint disclose that the Scott Corporation, of Miami Beach, on May 19, 1947, owned and operated a business known as the Lincoln Cafeteria. The stock of the Scott Corporation was owned by Max Richter, M. Yedlin, Sylvia Yedlin, Oscar Frankel and Millie Kaplan. Max Richter was president of the corporation and M. Yedlin was secretary. George Dubrow, Simon Botwinick and Seymour Satin constituted the Board of Directors of the Scott Corporation, which was organized and existed under the laws of the State of Florida. The owners of the stock transferred the same to George Dubrow, Simon Botwinich, Benjamin Adler and Ruth Dubrow. The last named owners of the stock of the Scott Corporation obtained a legal dissolution thereof on May, 23, 1947.
The transferees of the above named stock of the Scott Corporation on May 19, 1947, paid $200,000 in cash to Max Richter, Sylvia Yedlin, Oscar Frankel and Millie Kaplan, and executed purchase price notes and secured payment thereof by a mortgage payable to them in the total sum of $494,240.70, as the consideration for The Lincoln Cafeteria owned by the Scott Corporation. The purchase price of the business supra was approximately $700,000. The principal assets of the Scott Corporation are those described in paragraph three of the amended bill. The trustees of the Scott Corporation were its president and directors at the time of the dissolution on May 23, 1947. These trustees, under Section 611.34, F.S.A., are charged with certain statutory duties and responsibilities enumerated in said Section. *Page 140 
The plaintiff-appellant, Sol Megdall, during 1946 and 1947 was a licensed realtor in Miami, Florida. The Scott Corporation in 1946 employed Sol Megdall to find a purchaser ready, able and willing to purchase The Lincoln Cafeteria and property of the Scott Corporation and promised to pay a broker's commission for such services a sum equivalent to 10% of the gross purchase price paid by the purchaser, the commission to become due and payable when the sale was consummated with the purchaser produced by the plaintiff-appellant. The plaintiff-appellant produced the purchasers viz.: George Dubrow, Simon Botwinick, Irving Kaplan, Benjamin Adler and Ruth Dubrow and the Lincoln Cafeteria owned by the Scott Corporation was sold to them. It is alleged that for the services rendered the Scott Corporation became obligated to pay the plaintiff a realtor's commission of 10% of $700,000 paid to the Scott Corporation for said property.
It was alleged that the broker's commission was due and payable to the plaintiff-appellant by the Scott Corporation on May 23, 1947, when it transferred its assets to the purchasers produced by the plaintiff; the transfer was fraudulent as against the claims of the appellant as a creditor of the Scott Corporation and all parties thereto had full knowledge of the claims of the plaintiff for a commission due him for services rendered. The transferees of the stock and assets of Scott Corporation required and received of the officers and stockholders thereof an agreement to indemnify and protect them against their payment of the plaintiff-appellant's claim for a realtor's commission.
The prayer of the bill is for an adjudication of the amount due the plaintiff-appellant in the way of a broker's commission and that the assets transferred by the Scott Corporation may by an appropriate decree be held liable for the payment of the realtor's commission of plaintiff so earned, past due and unpaid. The Chancellor below sustained a motion to dismiss the amended bill of complaint and one of the grounds thereof was that it "failed to state a cause of action against the defendants or either of them". It was the Chancellor's view that the amended bill was defective under Section 62.37, F.S.A., because the claim for the commission had not been reduced to final judgment and execution issued thereon, a nulla bona return obtained, and neither was it alleged that suit had been instituted in law for the collection of the commission. The amended bill was deficient when considered as a suit for declaratory decree under Chapter 87, F.S.A.
It is quite true that under Section 62.37, F.S.A., a creditor's bill may be filed in a court of equity, after the claim is reduced to judgment, for the purpose of subjecting the property of the debtor to the payment of the judgment, and we so held in construing the statute on numerous occasions. The application of the cited statute and our adjudications holding that a claim must be reduced to final judgment, execution issued thereon and a return nulla bona be had or obtained prior to the filing of a creditor's bill in equity is questionable when reviewing the facts alleged in the amended bill which are admitted to be true on motion to dismiss.
The basic underlying reason for the requirements of Section 62.37, F.S.A., is to make certain the fact that the creditor has exhausted all available legal remedies before seeking equitable relief. When as in this case a bill, which is not exclusively a creditor's bill, asserts an independent equity predicated upon the fraud or conspiracy of the defendants the reason for the statute fails and its applicability is not indicated. The plaintiff in this action is not seeking a remedy in aid of law but is asking relief founded upon "an equity distinct in itself." Berwick v. Associated Gas Electric Co., 20 Del. Ch. 265, 174 A. 122, 124. Moreover, equity does not require an idle gesture.
We have before us a dissolved corporation and a creditor thereof complaining. Each of the stockholders thereof, prior and subsequent to the dissolution, are made parties by the amended bill of complaint. Section 611.31, F.S.A., provides the procedure for the dissolution of a corporation. Section 611.32 recites that the corporate existence of all corporations shall continue for *Page 141 
a period of three years after date of dissolution for the purpose of prosecuting and defending suits by or against the corporation. Section 611.33 authorizes suits against stockholders of dissolved corporations for enumerated purposes.
Section 611.34 provides that upon the voluntary dissolution of any corporation existing under the laws of Florida, the president and directors shall be trustees thereof with full power to settle its affairs, collect its debts, and divide the money and property among the stockholders, after paying the debts due and owing by the corporation at the time of its dissolution as far as such money and property will enable them so to do; they may sue as trustees in behalf of the dissolved corporation and suits may be instituted against them as trustees of the dissolved corporation and such trustees jointly and severally responsible to the creditors and stockholders of such corporation to the extent of the property and effects of the dissolved corporation coming into the hands of the officers as trustees.
Section 611.34 further provides that in the event of dissolution of the corporation from any other cause (than voluntary) a petition may be filed in the Circuit Court by any three or more creditors or stockholders of any dissolved corporation, praying that a receiver be appointed and the Circuit Court or Judge thereof, at Chambers, shall hear and consider said petition, and for just and reasonable grounds shall grant the petition and appoint a receiver * * * but no voluntary dissolution shall be made or permitted after the institution of any suit or proceeding against any corporation for an involuntary or forced dissolution. The Section supra was considered in Gerstel v. Wm. Curry's Sons Co., 157 Fla. 216, 25 So.2d 560. See Sections 612.46 to 612.52, inclusive, F.S.A.
The allegations of the amended bill of complaint, or reasonable inferences deduced therefrom, challenge the bona fides of both the old stockholders as well as the new of the Scott Corporation in the sale and transfer of the property described in paragraph three of the amended bill, as well as an assignment or transfer of all the stock in the Scott Corporation to the new stockholders as owned by the old stockholders. The two groups, it is alleged, had full knowledge of the claim of the appellant for a realtor's commission when the property of the corporation was transferred and its dissolution obtained. A court of chancery has the jurisdiction and power to adjudicate the claim of this creditor against the said defendants. See Section 11 of Article 5 of the Constitution of Florida; Section 611.31 to 611.34, F.S.A.; Lykes Bros. Florida Co. v. King, 125 Fla. 101, 169 So. 595; Pomeroy's Equity Jurisprudence, Vol. 3, pp. 890 to 914; Chapter 691, F.S.A.
It is well established law that the proper forum to sue for and recover a realtor's commission is in a court of law. An exception to this general rule was recognized by this Court in Moss v. Sperry, 140 Fla. 301, 191 So. 531, 125 A.L.R. 909, where, because of the peculiar facts set out in that suit, equity assumed jurisdiction to prevent the perpetration of a fraud. The case of Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384, 169 A.L.R. 600, involved a realtor's commission. The case at bar may easily be distinguished therefrom when consideration is given to the action and conduct of the old and new stockholders of the Scott Corporation in the transfer of the property and stock of the corporation and the hasty dissolution thereof without making provisions for the creditors as required by statute.
The order appealed from is reversed with directions to enter an order overruling the motion to dismiss and fix an appropriate date for the filing of answer or answers.
Reversed.
TERRELL, BARNS and HOBSON, JJ., concur.
ADAMS, C.J., and THOMAS and SEBRING, JJ., dissent. *Page 142