Z. H. Duncan

*v.*

State of Tennessee

(*Knoxville,* September Term, 1956.)

Opinion filed July 29, 1957.

J. Carl Lambdin, Jefferson City, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

This appeal comes to us from the Criminal Court of Knox County wherein the defendant, Duncan, was convicted of fraudulent breach of trust and sentenced to the State Penitentiary for three years.

Following the defendant's conviction he filed a motion for a new trial upon numerous grounds, all of which were overruled, resulting in an appeal to this Court.

The assignments of error deal separately with every ground for a new trial.

We deem it unnecessary to consider and discuss these assignments separately. Considered collectively they pose the question of whether or not the defendant, as a real estate broker, was guilty of fraudulent breach of trust in receiving payment of certain sums of money from a purchaser as agent for the seller of the property and in failing to turn it over to his principal. We think it is undisputed that Duncan was the exclusive agent of the owners of the property and that as such agent he was clothed with authority to execute a contract of sale to any purchaser who complied with the terms of the sale.

The owners of the property offered for sale were G. M. Keezle and Roland G. Keezle. This contract between Duncan and the Keezels was offered in evidence by the defendant and excluded by the trial court, and exception duly taken. This is the basis of the principal assignment of error, and we think it is determinative of the case. This contract not only determined the authority of Duncan to close a contract of sale on behalf of the owners, but it fixed his compensation, and that compensation was any sum of money in excess of the sale price.

The contention made by counsel for Duncan is that he could not be guilty of the offense charged because he was not the agent of the purchaser, or proposed buyer, and hence he embezzled nothing from them. Nor was he guilty of fraudulent breach of trust as to money received by

him from the purchaser because no trust relationship existed between them.

We think it is settled law in this State, and practically all jurisdictions, that a real estate broker cannot be an agent of both the seller and the buyer of property. Section 62-1324(d), T.C.A. While it is doubtless true that the prosecutor did not know the extent of the agency existing between the defendant and the owner, he knew full well that he could not be the agent of both.

We think the trial judge committed reversible error in excluding this contract.

On August 24, 1955, the defendant was employed by G. M. Keezle and Roland G. Keezle as their exclusive real estate broker to sell a certain house and lot at 716 Richard Street in the City of Knoxville. This was an "Exclusive Listing Contract". The sale price of the property was $3,600 and the defendant was to receive as his commission any amount over and above the sum of $3,600, which was the listing price. He was not to be paid the usual and customary commission as seems usual in real estate transactions, but only the "Overage" as herein stated. The house on the lot was old and run down so that the lot was valuable for business purposes.

On August 25, 1955, the defendant procured as purchasers, E. A. Pearson and his brother, who signed the sale contract agreeing to pay $3,900 on which they made a deposit of $200 by check, payable to Z. H. Duncan. This offer was accepted by the owners. There was a small fire in the meantime and the owners desired to make some repairs caused by the fire. The defendant had a deed prepared to be signed by the owners, and the contract of

sale was ready to be closed when a second fire occurred in September of 1955, which completely destroyed the house. The owners collected $3,000 on an insurance policy, which was payable to them. The owners thereafter insisted that the destruction of the house by fire terminated the contract.

The defendant's contention was, and is, that the purchasers were entitled to this insurance and were entitled to a deed upon payment of $900 on the theory that the owners had an equitable title to the property. The record discloses that the earnest money of $200 paid by the Pearsons was to Duncan as agent, etc. (Tr. pp. 25-26).

There were other lots owned by Mr. Keezle and a Mrs. Leahy involved in this transaction. The defendant Duncan was the exclusive agent for them. It is admitted that the prosecutor Pearson acquired title to the Leahy property and received credit for $100 on the purchase price which he paid to Mr. Duncan (Tr. p. 13). It is shown unequivocally that on September 3, 1955, the prosecutor gave to Mr. Duncan a check for $915 as in full payment of the purchase price of the property at 716 Richard Street. This was the property that was destroyed by fire.

When all the evidence is given full and fair consideration, including the contract of agency that was excluded, we fail to find any criminal liability. The defendant was in no way to blame because the owners failed and refused to execute a deed to the property in question. He had earned his compensation.

There is no reasonable ground for this prosecution for any alleged fraud in the defendant's failure to turn the money received by him over to the owners. He had an

interest in the money received as a part of his compensation. *Burke v. State,* 157 Tenn. 105, 6 S.W.2d 556.

■ There is quite a difference in a real estate broker's contract where he is to receive a five per cent commission upon the sale price of the property, and a contract where the contract provides that his compensation is to be an amount over and above the sale price. In the latter instance he has a lien on the proceeds over and above the sale price agreement.

"A broker who is to receive all above a specified price as his commission for selling real estate may enforce a vendor's lien on the property for such sum as a part of the purchase money." *Moss v. Thomas,* 218 Ala. 141, 117 So. 648, 58 A.L.R. 1495.

See also *Francis v. Wells,* 2 Colo. 660; and *Baker v. Cooper,* 201 App.Div. 639, 194 N.Y.S. 726.

"The law is, that where a defendant has an interest in the property or money alleged to have been fraudulently converted to his or her own use there can be no conviction of the crime of embezzlement. 10 Am.&Eng. Ency. of Law, 985, and cases cited in note 7." *McElroy v. People,* 202 Ill. 473, 476, 66 N.E. 1058, 1059.

"It has been held by a number of courts—and we believe that to be the sound rule—that the right to commissions or fees does not constitute a joint ownership in the fund collected *unless the terms of the contract which creates the agency expressly provide that the agent collecting the fund has the right to retain from the particular fund his commissions or fees. Commonwealth v. Jacobs,* 126 Ky. 536, 104 S.W. 345, 13

L.R.A.,N.S., 511, 15 Ann.Cas. 1226, and cases cited."
(Emphasis supplied.) *People v. O'Farrell*, 247 Ill. 44,
93 N.E. 136, 140.

We have given full consideration to the theory of the
State, and the able argument by counsel in support of it.
But we feel that the fundamental error of the trial judge
was due to his mistaking the legal relation existing
between the defendant and the parties to the sales con-
tract.

The assignments of error are sustained and the case
reversed with the recommendation that a *nolle prosequi*
be entered.