**L. F. LANG v. JACK HORNE and his wife CELESTE HORN, and THE COMMERCIAL BANK & TRUST COMPANY OF OCALA, a banking corporation under the laws of the State of Florida.**

23 So. (2nd) 848                                    June Term, 1945
November 30, 1945                                    Division A

*Wallace E. Sturgis,* for appellant.

*Frank R. Greene* for Jack Horne and Celeste Horne and *D. Niel Ferguson,* for The Commercial Bank & Trust Co., appellees.

BUFORD, J.:

Appeal brings for review order dismissing amended bill of complaint. The amended bill of complaint alleges in substance that on March 31st 1943 plaintiff and defendants entered into an agreement in writing whereby the defendants covenanted and agreed to sell and the plaintiff covenanted and agreed to buy for a total consideration of $16,750.00 and upon terms and conditions set forth certain described real estate. Copy of the agreement is attached to the amended bill of complaint and by apt language made a part thereof.

The amended bill alleges in substance that thereafter on November 12th the defendants executed and delivered to the Commercial Bank & Trust Company of Ocala, a banking corporation, a mortgage to secure the payment of $22,000.00, payable 12 months after its date with interest at the rate of

4% per annum, which mortgage embraced the lands covered by the contract above referred to and other property and which mortgage was given and accepted subject to the contract between the parties to this suit.

The mortgage also conveyed or attempted to convey as security the interest of the defendants in the contract above referred to, together with all monies secured or to accrue to the defendants thereunder; that the mortgage was duly recorded and remains uncanceled of record.

The amended bill alleges that whatever rights the Commercial Bank & Trust Company of Ocala obtained by virtue of the mortgage are subordinate and inferior to the rights of the plaintiff under the contract. That plaintiff has performed all and singular the terms and covenants and conditions of the said agreement on his part to be performed; has made all the payments required of him under the terms of the contract the total of which payments amount to $8,200.00 principal and $510.36 interest, making a total of $8710.36; that plaintiff, relying upon the defendants to carry out the terms of their contract, entered into possession of said land and continued in possession thereof until March 21st 1944, when such possession was disturbed and interrupted by the acts of the defendants, or one of them; that the plaintiff, while in possession of the land, expended divers large sums of money for improvements of a permanent character, which improvements are described in the bill of particulars attached to the bill and made a part thereof; that it was well known to the defendants at the time of the execution and delivery of the agreement that it was the purpose and intent of the plaintiff to improve said land and utilize same for the purpose of improving the same and that possession thereof was delivered the plaintiff under said agreement in advance of the time for closing title as specified in the agreement.

Plaintiff then claims a lien on the land for the improvements placed thereon less the amounts derived by plaintiff from the sale of pulpwood cut from said land as is in the bill therein set forth.

Plaintiff then alleges:

"5. That under the terms of said agreement there was paid

by plaintiff to defendants, Jack Horne and his wife Celeste Horn, the sum of One Thousand ($1,000.00) Dollars in cash, at the time of the execution and delivery thereof; and there was subsequently paid by plaintiff to said defendants on or about April 15, 1943, the further sum of $5,000.00 as provided by said agreement. In and by said agreement the said defendants, Jack Horne and his wife, Celeste Horne, covenanted and agreed that promptly upon payment of said sum of $5,000.00 said defendants would order Florida Title & Abstract Company, and as soon as possible thereafter, deliver to plaintiff complete abstract of title to said land, certified to date; and plaintiff alleges that said defendants breached said agreement and defaulted thereunder in that they wholly failed, prior to the institution of this suit, to deliver or cause to be delivered to plaintiff said abstract of title, although the time allowable for the said defendants to procure and deliver to plaintiff such abstract of title, in conformity with said agreement, has long since elapsed; that such default constitutes an abandonment of said agreement on the part of said defendants and amounts in effect, to an offer on the part of said defendants to rescind said agreement; and the plaintiff prior to the commencement of this suit, accepted said offer and demanded refund of the moneys laid out and paid by plaintiff to said defendants, in the premises, and offered to do all things in equity and good conscience required of plaintiff to be done in order to entitle plaintiff to such refund, but said defendants have failed and refused to make such refund.

"That independent of such acceptance of defendant's offer to rescind, the said default of the defendants, Jack Horne and his wife, Celeste Horne, entitles the plaintiff under the terms of said agreement, to rescind said agreement and plaintiff elects so to do.

"6. That the defendants, Jack Horne and his wife Celeste Horne, have further and separately breached the terms, covenants and conditions of said agreement in this:

"That the plaintiff being in possession of said land under said contract, and utilizing and improving the same for pasturage purposes and the ordinary uses of husbandry, and in conformity with the understanding of the parties at the time

of the execution and delivery of said agreement, found it expedient to cause certain timber of the character known as pulp wood to be cut from a portion of said land, and thereunto entered into an arrangement for the cutting and sale of such pulp wood to one T. C. Cannady who, in pursuance of said arrangement, commenced such cutting on or about February 1st 1944, and continued thereat until, to-wit, March 21, 1944, since when he has ceased his cutting operations upon said land and has withheld from plaintiff payment for that part of the pulp wood so cut by him and not previously remitted for in the sum of approximately $300.00, and has stopped payment on a certain remittance, by check of $238.68 given on, to-wit, March 18, 1944. That the failure and refusal of said Cannady to continue the cutting of said pulpwood upon said land, and the refusal of said Cannady to remit to plaintiff the unpaid amount due, as aforesaid, and the stopping of payment on said check, is occasioned by the fact that the defendants, Jack Horne and his wife Celeste Horne, or one of them, entered upon said land, to-wit, March 21, 1944, and then and there either (a) ordered the servants and employees of said Cannady, engaged in cutting said pulp wood off of said land, or (b) personally made representations, or thereafter on the same date caused representations to be made through the attorney of the defendants, Frank R. Greene, esq., Ocala, Florida, in part to the purpose and effect that the plaintiff was without right to allow such pulp wood timber to be cut from said land or to sell the same, or to receive the proceeds of such sale, and that said defendants would hold the person or persons cutting the same answerable to account to said defendants for the value thereof. That said acts and representations came to the knowledge of the said Cannady, with the aforesaid result. That the several said acts of the said defendants were and remain in violation of said agreement and constitute a breach thereof on the part of said defendants, and an abandonment of and offer to rescind said agreement on the part of the said defendants, which abandonment was recognized and offer to rescind accepted by plaintiff prior to the commencement of this suit, and thereupon the plaintiff demanded refund of the moneys laid out and paid by plaintiff to said defendants in the premises, and offered to do all things in equity and good

conscience required of plaintiff to be done in order to entitle plaintiff to such refund, but said defendants have failed and refused to make such refund."

· · There are other allegations of the Amended Bill which are not material here.

Plaintiff then asks for an accounting and rescission of the contract.

The contract referred to, inter alia, provides that payments should be made as follows:
"In cash on signing this agreement, receipt of which

is hereby acknowledged, by the Seller ................\$1,000.00
"On or before April 15, 1943 ................................ 5,000.00

"On or before the last of each month commencing with the last day of April, 1943, and monthly thereafter until the closing of title hereunder the sum of \$200.00, together with interest from April 15, 1943, on the unpaid balance of the aforesaid purchase price.

"On closing title the unpaid balance of the purchase price shall be evidenced and secured by a purchase money mortgage and note or notes executed and delivered by the purchaser to the Seller covering the aforesaid lands in a principal sum equal to the unpaid balance of the purchase price as of that date, which mortgage shall be payable at the rate of \$2000.00 per month with interest at. 6% per annum from the date of said mortgage on all unpaid balances payable monthly with the aforesaid installments of principal until the full principal sum with interest as aforesaid shall have been paid.

"The aforesaid purchase money mortgage shall contain proper clauses satisfactory to the Seller, obligating the Mortgagor (Purchaser) promptly to pay all taxes on said lands for the benefit of the Mortgagee (Seller) and a twenty (20) day acceleration clause.

"After payment of the sum of Five Thousand Dollars (\$5,000.00) hereinabove provided for on or before April 15, 1943, the Purchaser shall be placed in actual possession of said lands.

"Promptly after receipt of said Five Thousand Dollars (\$5,000.00) the Seller will place his order with the Florida

Title and Abstract Company for complete abstracts of title covering said lands, certified to date and deliver them to the Purchaser as soon as possible thereafter. The purchaser shall have forty-five (45) days after delivery of said abstract for examination thereof and if he accepts the title the Seller shall thereupon execute or procure the execution and delivery of good and sufficient warranty deed or deeds conveying said lands to the Purchaser free and clear of all encumbrances except taxes for 1943, which will be apportioned as of April 15, 1943. At the same time the Purchaser will execute and deliver his purchase money mortgage and note or notes as aforesaid. If the Purchaser, on examination of said abstracts, finds the record title as therein shown to be not merchantable, in whole or in part, he shall within the forty-five (45) days allowed for examination of said abstracts furnish to the Seller a written statement of any defects claimed to render same unmerchantable, and the seller shall have a reasonable time thereafter in which to correct or eliminate such defects, failing which, the Purchaser may cause such defects to be corrected or eliminated, if possible, within a reasonable time thereafter, the actual expense of which, not to exceed $500.00, shall be paid by the Seller, or, failing the clearing of such defects, as aforesaid, at his option the purchaser may accept conveyance subject to such defects, without diminution of the price by reason thereof, or at his option, may rescind this agreement, and, upon return to him by the Seller of all sums paid by the Purchaser hereunder, shall return to the Seller all abstracts received by him hereunder and surrender possession of said lands and personal property to the Seller, whereupon all rights and liabilities of the parties hereunder shall cease."

Motion was made and sustained to dismiss the amended bill of complaint. Whereupon a Second Amended Bill of Complaint was filed which did not materially differ from the allegations of the Amended Bill of Complaint.

The plaintiff's right to rescission is based upon the allegation that defendants failed to furnish abstract of title in conformity with the agreement. The agreement simply provided, in regard to the furnishing of the abstract, as follows:

"Promptly after receipt of said Five Thousand Dollars

($5,000.00) the Seller will place his order with the Florida Title and Abstract Company for complete abstracts of title covering said lands, certified to date and deliver them to the Purchaser as soon as possible thereafter. The Purchaser shall have forty-five (45) days after delivery of said abstract for examination thereof and if he accepts the title the Seller shall thereupon execute or procure the execution and delivery of good and sufficient warranty deed or deeds conveying said lands to the Purchaser free and clear of all encumbrances except taxes for 1943, which will be apportioned as of April 15, 1943."

There is no allegation that the abstract was not promptly ordered as required by the agreement. There is no allegation that the abstract has ever been demanded of the defendants.

The Bill of Complaint shows upon its face that the plaintiff entered upon the land at about the time the contract was made and more than 9 months later began to cut and remove from the land valuable growing timber; that he had been engaged in cutting and removing this timber for a period of about 7 weeks and was removing it in quantities sufficient to procure to him a net sum of $300.00 per week and that defendants objected to him having cut and removed such timber. The bill shows that up to the time of the institution of this suit plaintiff had cut and removed a large amount of said timber.

On November 15, 1944, the Court made its Order upon motion duly presented dismissing the Bill of Complaint and allowing the Plaintiff ten (10) days from that date in which to file and serve a further Amended Bill of Complaint if it be so advised, and upon November 29th 1944, entered final decree dismissing Amended bill of complaint at the cost of the plaintiff, no further amended bill having been filed.

It appears to us that the equities of the case are stated in the opinion of the Court wherein the Court said:

"It is a matter of more or less judicial knowledge that there is but one abstract company in this county, namely The Florida Title & Abstract Company, and that the securing of an abstract of title frequently and in fact usually entails a delay of many, many months. That such a delay is the common experience of all those who deal in lands in this county. Be

that as it may, up until the dispute over the right to cut pulp wood timber the plaintiff in this suit was in the full possession of the premises, making his monthly payments as they came due, and in nowise had complained about the delay in the furnishing of the abstracts. From the very allegations of the bill the Court cannot feel or otherwise believe that the failure of the delivery of these abstracts really has anything to do with the plaintiff's attempt to rescind the contract. That is an apparent afterthought. There was no specific day set for the delivery of these abstracts and no demand by the plaintiff for their delivery is alleged, or no notice or demand that they be delivered within a reasonable time as any predicate of rescission of contract by the plaintiff.

"Rescission and cancellation of contracts are harsh remedies not favored by the courts. The Court cannot see that it makes any difference whether the failure to deliver the abstracts was wilful or not. If, for any reason, whether intentional or unintentional, they were not delivered in what the plaintiff considered the time required by the contract and this failure to deliver was material to the plaintiff, he could have and should have made the time of the delivery of such abstracts of the essence of this contract by demanding their delivery within a reasonable time. This, he did not do, but continued in possession of the lands and their use and enjoyment thereof; continued making the monthly payments and said nothing about the abstracts until after the dispute arose between him and the vendors about his right to cut pulp wood timber from the lands.

"There was a great deal of argument about the importance of abstracts of title. The Court fully recognizes the importance of such abstracts but that has nothing to do with the fact that if plaintiff under the circumstances in this case felt that the non-delivery of the abstracts of title, either intentional or otherwise, was of importance to him the least he could have done in equity, and before seeking an equity court to apply the harsh remedy of rescission was to himself have demanded their delivery within a reasonable time. If he failed to do this, continued in possession of the property and its use, then certainly he cannot wait until after he has had a

dispute with the vendors about some other right under the contract and then try to pin the right to rescission on this alleged failure to deliver the abstracts.

"The court cannot agree with the contention of the plaintiff that the fact that the vendors challenge his right to cut pulp wood timber from the lands under contract was such an interference with his possession as to amount to an offer of rescission. It would seem to this Court that such holding would be most harsh, unusual and dangerous.

"It is not uncommon for a bona fide dispute to arise between vendors and vendees as to their rights under contract. The plaintiff might or might not have had the right to cut this pulp wood. To say that the vendors would have to stand back and allow the plaintiff to cut and remove such pulp wood because if they should protest wrongfully they would do so under peril of having the whole agreement rescinded and be compelled to refund large sums of money to the vendors under penalty of having a lien declared upon the lands involved a lien which they might not be able to satisfy, would seem to this Court to be the very antithesis of equity. The question of whether the plaintiff had a right to cut and remove the pulp wood was and is a matter which could have been made the subject of judicial determination, and the contention of the vendors that such right did not exist, if erroneous, was certainly far short of any such interference of possession as to entitle the plaintiff to the extraordinary and unfavored remedy of rescission.

"It is this Court's very fixed opinion that the failure to deliver abstracts, whether intentional or unintentional, cannot be made the basis for rescission under the circumstances of this case, unless it can be shown that such failure continued after a reasonable demand for such abstracts had been made, and secondly, that even if the vendors were wrong in protesting against the cutting of the pulpwood timber and in advising Mr. Cannady that they would hold him responsible, that this was not such an act as amounted to an offer of rescission or entitled plaintiff to rescind. It was purely a dispute over a right under the contract and in no sense a disaffirmance of same."

It is the well settled law of this State that a party who rescinds an agreement must place the opposite party in status quo, McDonald v. Sanders, 103 Fla. 93, 137 So. 122, 126; and where restoration is impossible contract cannot be rescinded. Pryor v. Oakridge Dev. Corp., 97 Fla. 1085, 119 Sou. 326; Williams v. Penn Mutual Life Insurance Co., 6 Fed. (2) 322; Cox v. Grose, 97 Fla. 848, 122 So. 513.

The several bills of complaint show conclusively that plaintiff had by his own acts and deeds placed himself in position where he could not return the property in the same condition in which he received it. It is a matter of common knowledge that growing timber is a valuable asset to cut-over pine lands in Florida and when this value is destroyed by denuding the land of such growing timber a great item of value of such land has been taken from it. It is not necessary for us to determine whether the plaintiff had the legal right to sell and dispose of the timber. That right could have been adjudicated in a different sort of a suit. We are only called upon now to determine whether or not the plaintiff may be allowed to rescind his contract when he is shown by his own pleading to have placed himself in position where he cannot place the defendants in status quo.

For the reasons stated, and on authorities cited, the decree is affirmed.

So ordered.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.