HENDRY, Chief Judge.
This is an appeal from a final decree which rescinded and cancelled a construction contract, and the mortgage note and deed executed and delivered in pursuance of said contract between plaintiff and defendant, William H. Fishman. The decree further ordered the defendant to execute an assignment of a lease between defendant, Vogue Bar & Grill, Inc. and Hadaba, Inc., to plaintiffs and declared that title to all the restaurant equipment which was under lease to Hadaba, Inc., vest in plaintiffs.
The plaintiffs filed their complaint charging the defendants, F. & G. Construction Company, Constanz de Stefano, William S. Altschull, Joseph Batkin, Fannie Batkin, his wife, and William H. Fishman and Joyce Fishman, his wife, in four counts; (1) usury, (2) conspiracy to exact usurious interest, (3) fraud and deceit, and (4) conspiracy to defraud. The plaintiffs sought cancellation of the mortgage note and deed and the lease mentioned above along with other relief. With leave of court, Vogue Bar & Grill, Inc. and Hadaba, Inc., were added as party defendants.
A summary final decree had previously been entered in favor of defendants, F. & G. Construction Company and Constanz de Stefano. At the commencement of the hearing below, a settlement was announced between plaintiffs and defendants, Joseph Batkin and Fannie Batkin, his wife, and William S. Altschull. Hadaba, Inc., is not a party to this appeal.
The remaining defendants request this court to set aside the chancellor’s decree as being manifestly against the weight of the evidence or legal effect of the evidence and assert that the court did not have the power to cancel and rescind the instruments and confiscate the defendant’s property rights.
In his final decree the chancellor made, inter alia, the following findings of fact:
“2. Prior to November 2, 1959, Plaintiffs were owners in fee simple of real property located in the Negro section and described as Lots 1, 2 and 3, Block 46, NORTH, CITY OF MIAMI, according to the Plat thereof, recorded in Plat Book “B” at Page 41 of the Public Records of Dade County, Florida.”
* * * * * *
“4. Sometime prior to June, 1959, Fishman falsely represented to Plaintiffs and their attorney that he was a qualified building contractor, licensed to build in Dade County, Florida; that he had constructed a certain Bearon Building located in Dade County, Florida; that he would construct on the above described Thompson property a building identical to the Bearon Building, except as modified by room enlargements for the sum of Ninety-five Thousand ($95,000.00) Dollars.
“5. On June 30, 1959, the parties executed “The Standard Form of Agreement Between Contractor and Owner for Construction of Buildings”. The contract provided for the construction of a building, above described in Paragraph 4, for Ninety-five Thousand ($95,000.00) Dollars. Said contract describes William *606 H. Fishman as the contractor and is executed by William H. Fishman as ‘contractor’. * * *
“6. In August of 1959, Fishman, with-cut the consent or knowledge of Plaintiffs or their attorney, entered into a written contract with F & G Construction Company, whose president was Con-stanz deStefano, a duly certificated sub-general contractor, to construct a building on the Plaintiffs’ property for the ■sum of Sixty-two Thousand ($62,000.00) Dollars.
“7. Thereafter, with the assistance of Fishman and deStefano, a Fifty Thousand ($50,000.00) Dollars first mortgage and construction loan was obtained from Dade Federal Savings and Loan Association (hereinafter the Federal). Fishman intentionally withheld from the Federal that he was a party to a contract to construct the said building for Ninety-five Thousand ($95,000.00) Dollars. The Federal’s records of the loan transaction •and all the testimony corroborate that the Federal had no knowledge of the $95,-000.00 contract and had executed a Fifty Thousand ($50,000.00) Dollar first mortgage and construction loan upon the basis that the total contract price for the construction was Sixty-two Thousand ($62,000.00) Dollars. The Federal’s appraisal for the cost of construction or ■reproduction costs was Fifty-nine Thousand ($59,000.00) Dollars.
* t\i * * ‡ #
“9. Fishman arranged to obtain $25,-'000.00 secondary financing from Defendants, Altschull and Batkin. In order to secure this loan, Plaintiffs were required to surrender title to their property in exchange for a 99-year lease with the option to reacquire title at the end of five (5) years for Twenty-seven Thousand Five Hundred ($27,500.00) Dollars or at the end of ten (10) years for Thirty Thousand ($30,000.00) Dollars. The annual rental was Two Thousand Five Hundred ($2,500.00) Dollars per year. The deed of conveyance and the ninety-nine (99)-year lease were both dated November 2, 1959.
“10. On November 2, 1959, the Plaintiffs also executed to Defendant, Fish-man, a mortgage and note in the sum of Twenty Thousand ($20,000.00) Dollars, with interest at six and one-half (Sf/2%) per cent per annum payable in monthly installments of Two Hundred Twenty-seven & 10/100 ($227.10) Dollars with the first payment to commence on February 15, 1960. Said mortgage note was secured by a mortgage deed of even date on the leasehold described in Paragraph 9 above. * * *
5jC
“13. The building constructed for Plaintiffs was not in accordance with the specifications as set forth in the $95,-000.00 contract. The reasonable value for all costs in connection with the construction of the building was $61,952.00 and not $95,000.00.
“14. Plaintiffs would not have entered into the $95,000.00 contract had they been aware that the actual cost of the construction was $61,952.00.
“15. In addition to the $20,000.00 note and mortgage received by Fishman at the completion of the building, he obtained an additional $3,743.57 for the following items:
1) Taxes $ 976.19
2) Taxes 1,120.68
3) Insurance 494.00
4) Survey 40.00
5) Interest 749.25
6) Title 4.00
7) Interest on $20,000.00 299.70
8) Interest to February 1 59.75
TOTAL $ 3,743.57
The first six items in his tabulation had previously been deducted as closing costs by the Federal. In addition, by the seventh item, Fishman charged the Plain *607 tiffs 6% interest on money that had been furnished by the Federal, although Fish-man had received $6,663.88 at the commencement of the construction. The seventh item charged was $299.70 as interest on $20,000.00 which Plaintiffs never received, and Fishman had never furnished.
“16. As a condition precedent, the contract provided that the building contain a store and that Fishman was to have a 20-year lease thereon at $125.00 per month. Although not provided for by the contract and without the consent of the Thompsons, Fishman built a fully air conditioned and equipped restaurant, keeping title to the equipment.
“17. In January of 1960, in accordance with the terms of the $95,000.00 Fishman contract, Plaintiffs entered into the 20-year lease with Vogue Bar & Grill, Inc. (a 'corporation wholly owned and controlled by Defendants, Fishman and his wife, Joyce Fishman) providing for monthly payments of $125.00 for the fully equipped air conditioned restaurant.
‡
“21. Since the execution of the Fish-man contract, the minimum sums of money received by Defendants Fishmans, or their alter ego, Defendant Vogue Bar & Grill, Inc., are as follows:
"1. Thirty-seven — thirty-eight monthly mortgage payments at $227.10 or a minimum total of: $ 8,652.70
"2. Cash withdrawn from the Federal: 6,663.88
“3. Sub-lease to Hadaba, Inc. for $300.00 per month; a profit of $175.00 for a minimum of 44 months: 7,700.00
“4. Cash or credits, as set forth in Paragraph 11 [15] hereof: 3,743.57
TOTAL $26,760.15
******
“23. That Fishman falsely represented himself to be a licensed building contractor, I find to be true. It has been contended by Plaintiffs that because Fishman falsely represented himself as a licensed building contractor, that in accordance with Wood v. Black, 60 So.2d 15 (Fla.1952), Chapter X of the Contractors Code of Metropolitan Dade County,, and particularly Sec. 10-3, ‘Persons without certificate representing selves as contractors’ (Ord. No. 56-25, § 17.03, 11 — 12— 57), that the $95,000.00 Fishman contract of June 30, 1964 [sic] is ipso facto, void' ab initio; that the $20,000.00 mortgage and note to Fishman and the lease to’ Vogue Bar & Grill, Inc., made in accordance with a condition precedent to the-contract, and the sublease are likewise-void ab initio; that all payments made tc Fishman by, or on behalf of the Plaintiffs, should be returned to Plaintiffs- and that Plaintiffs should have a judgment against Defendants Fishman and’ Vogue Bar & Grill, Inc. for a minimum’ amount of $26,750.00.
“To this contention, the Defendants-Fishman argue laches. Plaintiffs have-not been guilty of laches. Immediately upon discovering the facts as set forth herein, Plaintiffs acted promptly and with due diligence. While Plaintiffsr contentions are not without merit, I find it unnecessary to base my adjudications-on Wood v. Black,.supra. Nor do I find it necessary to further consider Plaintiffs’ charge of usury.
“24. More disturbing to this Court than Fishman’s not being a licensed contractor, has been the flagrant taking of unfair advantage of Plaintiffs by Fish-man, which amounts to unconscionable-overreaching.-
“The reasonable costs of construction of the building as contracted for was $62.-000.00 — not $95,000.00. Fishman charged Plaintiffs $9,500.00 for financing, an additional $3,000.00 for obtaining the loan from the Federal, $4,750.00 for supervising the building and $1,500.00 for obtaining for his corporation a lease from Plaintiffs. By his own admission, Fish-man has charged a total amount of $18,- *608 750.00 for financing. The only money that was actually furnished was the $50,-000.00 loan from the Federal and the $25,-000.00 from the Batkins and Altschulls.
“25. Plaintiffs reposed trust and confidence in Defendant Fishman, and in his statements and representations as to the actual costs of the construction of the building and as to his being a licensed contractor and as to the quality of the building to be constructed; said representations as to said matters to Plaintiffs were false. Plaintiffs had the right to regard Defendant’s representations as to said matters as statements of fact and Plaintiffs did so regard them and rely on them to their great injury, damage and loss. Material representations were made by Defendant Fishman to Plaintiffs which were false, misleading and produced an impression upon the minds of Plaintiffs which was false and misleading and which induced Plaintiffs to enter into the $95,000.00 contract. The result thereof was a fraud on Plaintiffs entitling Plaintiffs to a decree of rescission of said construction contract, the $20,000.00 note and mortgage to Defendant Fishman and to other relief hereinafter specified.
“26. Plaintiffs were inexperienced and wholly ignorant as to construction ■costs, the quality of the building to be ■constructed and the licensing of the Defendant Fishman and had a right to rely ■on Fishman’s representations which were false. Defendant Fishman knew of Plaintiffs’ inexperience and lack of knowledge as to such matters. Plaintiffs were overreached by Defendant Fishman, and the said parties were not on equal footing.
“27. Defendant Fishman was cognizant of his false misrepresentations and the fraud practiced as aforesaid upon Plaintiffs and willfully deceived Plaintiffs. The Court finds that Plaintiffs had the right to take and regard Defendant’s representations as to the costs and quality of the building, and that he was a licensed contractor as statements of fact, and not of opinion, and Plaintiffs did so take them and rely upon them.
“28. The testimony and evidence adduced by Defendants Fishman and Vogue Bar & Grill, Inc. fail to show that said transactions were fair and reasonable.
“29. The Court further finds that the actual cost for the construction of the building, as provided for in the Fishman contract, instead of $95,000.00 was $62,-000.00, and that Plaintiffs are still obligated to pay $75,000.00 for the construction thereof, (the Federal — $50,000.00; Altschulls-Batkins — $25,000.00). Plaintiffs are entitled to a decree for the cancellation and return of their note and mortgage for $20,000.00 which is far in excess of the actual cost of the building.
“30. The Court further finds that Defendant Hadaba, Inc. was an innocent party to this transaction. * * * ”
It is well recognized that a court of equity has the power to enforce cancellation of a contract procured by fraud [1] and it is the proper remedy where the facts show that the legal remedy would not be full and complete.[2] Fraud includes the act of taking unfair advantage of another to his injury which amounts to unconscionable overreaching.[3]
A court of equity will not hesitate to interfere where it is perfectly plain to the court that one party has overreached the other and has gained an unjust advantage which it would be inequitable to permit him *609 to enforce.[4] The Supreme Court has quoted with approval[5] the following rule expressed by Mr. Justice Root, speaking for the Supreme Court of Washington in Stone v. Moody, 41 Wash. 680, 84 P. 617, 620, 85 P. 346, 5 L.R.A.,N.S., 799:
“It is not the function of courts to make contracts for parties, or to relieve them from the effects of bad bargains. But where the simplicity and credulity of people are taken advantage of by the shrewdness, overreaching and misrepresentation of those with whom they are dealing, and they are thereby induced to [do] unwittingly something the effect of which they do not intend, foresee, or comprehend, and which, if permitted to culminate, would be shocking to equity and good conscience, we think a court of equity may with propriety interpose.”
 There is ample evidence in support of the chancellor’s findings that the defendant’s conduct amounted to overreaching by which they were able to gain an unfair advantage over the plaintiffs. We find that these facts demonstrate that the plaintiffs are entitled to a rescission and cancellation of the contract and instruments executed in pursuance thereof between them and the defendant, William H. Fishman, under the principles laid down by the Supreme Court in Stokes v. Victory Land Co.[6] and Peacock Hotel v. Shipman.[7]
The defendants argue that they have not been restored to their initial position and therefore the contract can not be rescinded.[8] They assert that they have out of pocket expenses of $15,933.36 for which they have not been reimbursed, and that defendant, William H. Fishman has expended much time and effort in pursuance of the terms of the contract. We do not agree that this requirement is not satisfied in the present action. In Paragraph 21 of the court’s findings, supra, the chancellor determined that the minimum sum of money-received by the defendants as a result of the transaction under consideration was $26,-760.15. Having received a benefit in excess of the amount they contend should be returned to them the defendants are not in an equitable position to demand a return to the status quo.[9]
Having found that the chancellor’s findings are supported by the evidence and that the relief comports with sound equitable principles the decree appealed from is affirmed.
Affirmed.
TILLMAN PEARSON, J., concurs in the decision.

. International Realty Associates v. McAdoo, 87 Fla. 1, 99 So. 117 (1924).

. Willis V. Fowler, 102 Fla. 35, 136 So. 358 (1931).

. Moss v. Sperry, 140 Fla. 301, 191 So. 531, 125 A.L.R. 909 (1939).

. Peacock Hotel v. Shipman, 103 Fla. 633, 138 So. 44 (1931).

. Id.

. 99 Fla. 795, 128 So. 408 (1930).

. Supra, note 4.

. Lang v. Horne, 156 Fla. 605, 23 So.2d 848 (1945).

. Rountree v. Davis, 90 Ga.App. 223, 82 S.E.2d 716 (1954).