### GULF SHORE DREDGING CO., Inc. v. HUTTO, et al.
No. 165526.

Circuit Court, Hillsborough County.

August 20, 1968.

Harry M. Hobbs of Hobbs, de la Parte, Whigham & Gonzalez, Tampa, for the plaintiff.

Malory B. Frier, Tampa, staff attorney for Law, Inc., "an agency providing legal services for the indigent," for the defendants.

ROBERT W. PATTON, Circuit Judge.

*Final judgment:* This cause came on for final hearing before the court on May 31st, 1968 at which time there were present before the court the following — W. T. Hodges, vice-president of the plaintiff Gulf Shore Dredging Co. Inc. ("Gulf Shore Dredging" hereafter), and Harry M. Hobbs, Esq., of Hobbs, de la Parte, Whigham & Gonzalez, attorneys for the plaintiff; and the defendants William J. Hutto and Helen Hutto, his wife, and their attorney Malory B. Frier, Esq.

An answer was filed by the defendant Southern Discount Co. twelve days after a default had been entered against it, but said answer simply alleged that said corporation is the holder of a mortgage on the real estate involved in this action, which had been previously alleged in plaintiff's complaint. A default was likewise entered against the defendant Ybor Loan Co. for its failure to plead. Neither Southern Discount Co. nor Ybor Loan Co. was represented at the hearing.

The court heard the sworn testimony of W. T. Hodges and William J. Hutto and Helen Hutto, as well as that of Dewey McLeod for the plaintiff. It was stipulated by the plaintiff and the defendants Hutto that the depositions of Mr. and Mrs. Hutto which had been previously filed should be considered as evidence and that all answers to interrogatories filed in the case should likewise be considered as evidence.

At the conclusion of the hearing it was agreed between counsel for the plaintiff and for the defendants Hutto that final arguments should be continued until a later date, and pursuant thereto this court heard such arguments on June 4th, 1968.

By its complaint the plaintiff Gulf Shore Dredging seeks to foreclose a mortgage on approximately three acres of real estate in Hillsborough County, together with the improvements thereon, which mortgage was executed by the defendants Hutto on September 27th, 1966 to Gulfshore Building Company, Inc. ("Gulfshore Building" hereafter). This mortgage was given to secure the payment of a promissory note in the original principal amount of $2,600 executed by the defendants Hutto on September 27th, 1966 to Gulfshore Building. The promissory note was payable in monthly installments of $31.55 each including interest at the rate of 8% per annum payable monthly.

In its complaint the plaintiff alleged that it had become the owner of said promissory note and mortgage through mesne assignments, and further alleged a default in payment by the defendants Hutto on June 10th, 1967, and the exercise by plaintiff of the acceleration privilege contained in both the promissory note and mortgage. The plaintiff alleged a principal balance due of $2,547.02, plus interest thereon from September 10th, 1967, for which it seeks to foreclose the mortgage, together with costs and reasonable attorney's fees. The defendants Southern Discount Co. and Ybor Loan Co. were alleged to hold liens on said real estate inferior to the lien of plaintiff's mortgage.

The defendants Hutto filed their answer to the complaint setting up two principal defenses, to-wit — (1) fraud in the transaction giving rise to the promissory note and mortgage coupled with allegations that the plaintiff was not a holder in due course and had actual knowledge of said fraud; and (2) usury, of which the plaintiff had knowledge and in which it participated. It was stipulated by the plaintiff at the final hearing that it was not claiming to be holder in due course of the promissory note.

After having heard the testimony at the final hearing and having considered the depositions of the defendants Hutto, the answers to interrogatories contained in the court file, and the exhibits admitted, the court makes the following findings of fact —

At some time prior to the date of the promissory note and mortgage the Huttos were desirous of obtaining certain plumbing work in their home located on the real estate encumbered by the mortgage. The defendant William J. Hutto, was, at that time 65 or 66 years of age and in poor physical condition. He was afflicted with

28

diabetes which had resulted in the amputation of one leg and gangrene in the other, and it was because of this condition that there was a need for the plumbing work.

The Huttos contacted Gulfshore Building as a result of a newspaper advertisement run by the latter (exhibit A to request for admissions filed March 27th, 1968) and pursuant thereto they were visited by Dewey McLeod, a representative of that company. After some preliminary discussion McLeod advised the Huttos that it would be necessary to have a credit check made for the purpose of ascertaining whether the work could be financed, and a $10 charge was made for this purpose. The Huttos apparently qualified because Mr. McLeod subsequently tendered to them for execution a retail installment contract which has been filed in evidence as defendants' exhibit 6. Pursuant to this contract Gulfshore Building agreed to install a 3-piece bath set, hot water heater, double compartment kitchen sink, a septic tank and drain field and to pay any taxes then due on the land for a total price of $2,600.

The Huttos testified that the purchase price was not filled in at the time they signed the contract because McLeod told them such price could not be ascertained until all the work had been done, and that he further advised that the work would be done as cheaply as possible.

A pre-trial order was entered in this cause on May 31st, 1968 and contained therein is a recitation of certain stipulations and admissions. One of the admissions made by plaintiff was the allegations contained in paragraph 5 of the first defense contained in the answer of the Huttos. In this paragraph it is stated that the actual cost of the plumbing work, including the new fixtures, was $550, and that the total cost of the installation of the septic tank was $155.12. In addition thereto, it was stipulated at the final hearing that Gulfshore Building advanced $116.03 for the payment of past due taxes on the real estate in question and also expended $100 for title work, documentary stamps, intangible tax and recording in connection with the mortgage. These expenditures, and the plaintiff's only further contention in this regard is that Gulfshore Building was entitled to reasonable compensation for its services. It was as a result of this factual situation that the mortgage for $2,600 was taken.

An interesting sidelight is the various assignments of the mortgage in question (original assignments filed in evidence). The mortgage was assigned by Gulfshore Building to the plaintiff on October 18th, 1966; then by the plaintiff it was assigned to Capital National Bank of Tampa on the same date; Capital National Bank

of Tampa assigned the mortgage to plaintiff on January 12th, 1967 and the latter assigned it to Arta I. Parham on the same date; and on November 21st, 1967 Arta I. Parham assigned same to the plaintiff. It has been likewise admitted that the plaintiff and Gulfshore Building had certain common officers, directors and employees.

The defenses raised by the Huttos will be considered in reverse order, that is, first the defense of usury and secondly the defense of fraud.

Plaintiff contends that the transaction between the Huttos and Gulfshore Building did not involve a loan of money or the for-bearance of a debt, but was in truth the sale of a service by Gulf-shore Building to the Huttos. The service so sold, it is contended, was that of a contractor. It is admitted that Gulfshore Building was not in the plumbing or septic tank business, but contracted this work out. Plaintiff further contends that Gulfshore Building had a right to fix its price for its service as contractor and, because the Huttos were unable to acquire the plumbing fixtures and services and the septic tank work except on a time basis, that Gulfshore Building was entitled to charge $2,600 and to secure payment of same by the mortgage. Plaintiff relies on the law as enunciated in the cases of Davidson v. Davis, 52 So. 139, Dillon v. J .W. Walter, Inc., 98 So.2d 391, and Mid-State Homes, Inc. v. Staines, 161 So.2d 569.

In opposition, the Huttos rely on the case of Brown v. Home Credit Co. Inc., 137 So.2d 887. It is the opinion of this court that there was a factual element in the Brown case which has not been made to appear in the case before the court. In that case there was a lender participating in the transaction with the builder or contractor from the outset. There is no evidence of such a situation here, and any argument that the plaintiff was in fact a lending agency participating in the transaction with Gulfshore Building could only be based, insofar as the evidence before this court is concerned, upon inference and assumption. Treating Gulfshore Building as a contractor selling a service, it is the opinion of this court that it is bound to follow the legal doctrine set forth in the Dillon case and other Florida decisions, even though the line be-tween some of these cases on a factual basis and that involved in the Brown case appears at times to be thin indeed.

In answer to the charge of fraud on the part of Gulfshore Build-ing the plaintiff, in addition to denying same, contends that the Huttos waived any right to relief on this ground because of their failure to take action when they first discovered the amount they had been charged. (Exactly when they discovered the matter of

the $2,600 charge is not clear, but it can be assumed that they knew of the amount when they signed the promissory note and mortgage because in his deposition (page 18) Mr. Hutto said that the work had been done before the mortgage was executed and he didn't know anything else to do but to sign it.) The plaintiff here seems to rely upon a principle applicable to the law of rescission and cancellation of contracts. It is true that the defense of inducement by fraudulent representations is waived by silence after discovery (Hendricks v. Stark, 126 So. 293, Lake Mabel Development Corp. v. Bird, 126 So. 356, and other Florida decisions).

It is to be noted, however, that by their first defense in their answer the Huttos do not seek rescission and cancellation of the note and mortgage but only to recoup damages for the alleged fraud and a reduction in the amount of the promissory note and mortgage. It develops that Florida recognizes a distinction in this regard between relief sought by way of rescission and cancellation and by recoupment (see Storrs v. Storrs, 178 So. 841). Although the original decision in the Storrs case was changed on rehearing, the Supreme Court of Florida in its original opinion, and in its opinion on rehearing, clearly asserts the principle of law that in an action where the plaintiff is seeking to recover the purchase price, the defendant can recoup damages for fraud in the transaction — even though he remained silent after the discovery of such fraud. In that decision, the Supreme Court quoted a portion of an opinion of the Supreme Court of Illinois as follows —

> In cases of fraud upon the part of the vendor, the vendee, who alone has the right to claim a rescission, may remain silent and bring his action to recover damages for the fraud, or may rely on it by way of defense to the action of the vendor, although there has been full acceptance of the property, with knowledge of its defects. An affirmance of the contract by the vendee with such knowledge merely extinguishes his right to rescind the sale, but his other remedies remain unimpaired.

In commenting upon this statement, the Supreme Court of Florida said —

> In such cases, says the court just quoted from, the vendee may still retain the clear right to recoup, as against a claim for the purchase price, any damages occasioned by the vendor's actionable fraud practiced in bringing about the bargain and sale, if such it is shown to be, when sued for the purchase price, whether such purchase price be sued for as such, or sued for in an action wherein it is represented by a note or mortgage given in closing the transaction. This is so, even though by affirming the contract of sale, or by remaining silent and failing to rescind the whole transaction within a reasonable time after the discovery of the fraud, the vendee may have estopped himself to do other than affirm the contract, remain obligated to pay the agreed purchase price,

and stand remitted to whatever recoupment he may be able to establish in the nature of a counterclaim for damages when sued for the amount of purchase price represented by a note or mortgage given at the time the transaction was closed.

On rehearing the court did not change its position with respect to said principle, but held that it did not apply in that case because a renewal note had been given after discovery of the fraud. Insofar as this court has been able to ascertain, the decision in the Storrs case, and the principle therein set forth, has never been modified or departed from by the Florida courts.

The plaintiff here has stipulated that it is not a bona fide holder for value of the promissory note, and that it is subject to any defenses which might legally have been asserted against the original payee-mortgagee. The plaintiff has further taken the position that the transaction out of which the note and mortgage arose was a sale of services from Gulfshore Building to the defendants Hutto, this being the basis of the argument that the defense of usury was not applicable. Thus it has become necessary for this court to determine whether there was fraud in the original transaction.

Fraud has been defined in many ways by courts, and in the recent decision by the Third District Court of Appeal in Fishman v. Thompson, 181 So.2d 604, the following definition was given — "Fraud includes the act of taking unfair advantage of another to his injury which amounts to unconscionable overreaching."

In the case under consideration, the plaintiff asserts that Gulfshore Building contracted with the Huttos to provide the work and materials heretofore mentioned. For this purpose it became the agent of the Huttos and occupied a fiduciary relationship with them, and as such was bound to represent, in good faith, the interests of its principals, the Huttos. See: Quinn v. Phipps, 113 So. 419, Connelly v. Special Road & Bridge District No. 5, 176 So. 794. To this court it is academic that Gulfshore Building did not so act in good faith with the Huttos in this transaction when it charged them $2,600 for goods and services which actually cost Gulfshore Building $921.15. If this fact alone is not sufficient to constitute fraud, then surely the physical condition of Mr. Hutto, when coupled with the psychological results of same on both the Huttos, and in consideration of the further fact that Mr. Hutto has only a ninth grade education, all of which appear from the evidence, are sufficient. It is here acknowledged that Gulfshore Building was entitled to a reasonable compensation for its services. It is obvious, however, that the sum of $1,678.85 had no reasonable relationship to the services performed by Gulfshore Building, and for this court to permit the recovery of same in this action would

amount to judicial approval of an unconscionable overreaching against the Huttos.

The plaintiff introduced no evidence as to what would be reasonable compensation for the services of Gulfshore Building in the transaction under consideration, and the only evidence before the court is the letter from Kal-Mar Construction, Inc., received in evidence as defendants' Huttos' exhibit 11 with consent of the plaintiff. This exhibit contains the statement that on small jobs a general contractor could expect to receive 20% of the total cost of the project for profit and overhead. Applying this percentage to the total cost of $921.51 results in the sum of $184.23, which for this purpose this court has rounded out to $185. When this last figure is added to $921.15 a total of $1,106.15 is obtained.

It is the opinion of this court that the defendants Hutto are entitled to recoup from the plaintiff as damages for the fraud practiced upon them by Gulfshore Building (and chargeable against the plaintiff because it admits not to be a holder in due course) the sum of $1,440.87 (being the difference between the principal amount of $2,547.02 claimed by plaintiff and the aforesaid sum of $1,106.15 which this court has determined Gulfshore Building was entitled to charge). In addition thereto, the plaintiff is entitled to recover interest at the rate of 8% per annum on the said sum of $1,106.15 from September 10th, 1967 plus its costs expended in this action and a reasonable attorney's fee for the services of its attorney herein, and the mortgage held by the plaintiff secures the payment of the total of these amounts. It is further found by this court that the exercise by the plaintiff of its right to accelerate the balance due on the promissory note secured by the mortgage is upheld, and that by reason thereof the total of the amounts found due to the plaintiff is now due and payable in full.

There remains one other matter to be determined by this court. The plaintiff offered in evidence as the promissory note secured by the mortgage what appears to be a carbon copy which was executed by the defendants Hutto. Neither Mr. Hodges nor Mr. Hutto was able to identify this as the original note. The witness Dewey McLeod, who apparently was the agent of Gulfshore Building who actually handled the transaction, testified that an original and a copy of the note were signed by the Huttos. No one has been able to account for the whereabouts of the original.

The plaintiff and the defendants Hutto have stipulated to the introduction of the signed carbon copy of the note, but it is obvious that some protection must be given to both the Huttos and to the purchasers at the foreclosure sale hereinafter ordered (other than the plaintiff if it should become the purchaser) against the con-

tingency that the executed original of said note may turn up in the hands of an innocent purchaser for value and in due course who could be in a position to enforce same for the face amount thereof, plus interest, and in the further position to assert ownership of the mortgage by virtue of ownership of the note. The Supreme Court of Florida, in a similar situation, in Lovingood v. Butler Const. Co., 131 So. 126, approved the action of the trial court in requiring the plaintiff in a foreclosure action to give bond to protect persons similarly situated from loss in the event of a lost note appearing in the hands of a bona fide holder.

Having duly considered the evidence, the arguments of counsel, and having made the foregoing findings of fact and law, it is thereupon ordered and adjudged —

(1) That this court has jurisdiction of the parties to this cause and of the subject matter hereof.

(2) That the defaults heretofore entered herein are hereby confirmed.

(3) That by reason of the fact that the plaintiff is not a holder in due course of the promissory note which, with the mortgage securing same are the subject matter of this action, the defendants William J. Hutto and Helen Hutto, his wife, are entitled to recoup as damages the sum of $1,440.87 for the fraud of the original payee of said promissory note and mortgagee in said mortgage, Gulfshore Building, and that said amount is offset against the principal claimed by the plaintiff as being due on said promissory note.

(4) That after the offset, aforesaid, there is due to the plaintiff, Gulf Shore Dredging, from the defendants William J. Hutto and Helen Hutto, his wife, the following sums —

| | | |
|---|---|---|
| (a) | Principal amount of indebtedness remaining due and unpaid on the promissory note | $1,106.15 |
| (b) | Interest on the principal sum aforesaid from September 10th, 1967 at the rate of 8% per annum | 78.78 |
| (c) | Witness fees | 10.40 |
| (d) | Sheriff's costs for service | 30.95 |
| (e) | Filing fee | 15.00 |
| (f) | Court reporter | 77.60 |
| (g) | Reasonable attorney's fee for plaintiff's attorney | 275.00 |
| | Total sum due plaintiff: | $1,593.88 |

(5) That a lien is held by the plaintiff, Gulf Shore Dredging, for the total sum specified in the preceding paragraph, and for all future costs of this action, superior in dignity to any right, title, lien, interest, or claim of the defendants William J. Hutto and Helen Hutto, his wife, Southern Discount Co. and Ybor Loan Co., in and to the following described real estate situate, lying and being in Hillsborough County, to-wit: [legal description omitted].

(6) The plaintiff shall obtain and file in this cause a good and sufficient surety bond conditioned to pay in cash all sums due to any bona fide holder for value of the duplicate original of the aforesaid promissory note executed by William J. Hutto and Helen Hutto, his wife. If such bond is not so obtained and filed, then the clerk of this court shall not sell said real estate as hereinafter provided.

(7) That if the total sum specified in paragraph 4 aforesaid, together with interest thereon at the rate of 8% per annum from and after the date of this final judgment, and all costs of this proceeding incurred subsequent to the date hereof, are not paid within five days of the date hereof, then provided the plaintiff shall have procured and filed in this cause a bond as hereinafter provided, the clerk of this court shall sell the real estate described in paragraph 5 of this final judgment at public sale at 11:30 A.M. on the 17th day of September, 1968 at the west front door of the Hillsborough County Courthouse in the city of Tampa to the highest and best bidder for cash, after having first given notice of said sale in the manner prescribed by §707.02 of the Florida Statutes.

(8) That the plaintiff may be a bidder for the purchase of the property at the sale. That if the plaintiff shall be the purchaser at the sale, the clerk shall credit on the bid of the plaintiff the moneys herein found to be due to the plaintiff, or such portion thereof as may be necessary to pay fully the bid of the plaintiffs, except that the sums mentioned in paragraph 9 (a) of this judgment must be paid in cash.

(9) That after confirmation of the sale, whether confirmation be by the clerk filing the certificate of title or by order of this court ruling upon objections to the sale, the clerk shall make distribution of the proceeds of the sale as follows —

(a) By first paying all costs and expenses of these proceedings subsequent to the entry of this final judgment, including the cost of publishing the notice of sale and the clerk's fee for conducting the sale, unless the plaintiff, having already paid for these two

items of costs, shall be the purchaser at the sale; the cost of any documentary tax stamps and surtax stamps affixed to the certificate of title, to be based upon the amount paid for the property, plus the cost if paid by the purchaser.

(b) By next paying to the plaintiff the total sum herein found to be due to the plaintiff pursuant to paragraph 4, supra. Said money shall be applied as follows: first, to the costs and expenses, including attorney's fees, incurred by the plaintiff in foreclosing the mortgage placed in evidence as plaintiff's exhibit "B"; second, to the payment of accrued interest on the note secured by said mortgage; and third, to the payment and the satisfaction of the said note secured by said mortgage.

(c) If the total amount realized on the sale exceeds the total of the sums required under paragraphs (a) and (b), supra, then the clerk shall disburse the surplus as this court shall hereafter direct.

(10) That upon the confirmation of said sale, whether by the clerk of this court filing a certificate of title herein or by order of this court ruling upon objections to said sale, the defendants William J. Hutto and Helen Hutto, his wife; Southern Discount Co.; and Ybor Loan Co., and any and all persons claiming by, through or under said defendants, or any of them since December 7th, 1967, the date of the filing of the lis pendens herein, are forever barred and foreclosed of any and all right, title, interest lien, claim or demands of any kind or nature whatsoever in and to the real estate described in paragraph 4 of this judgment, and that the purchaser at said sale, his, her or its representative or assigns, shall be let into possession of said real estate.

(11) In the event the defendants William J. Hutto and Helen Hutto, his wife, shall desire to pay the total sum specified in paragraph 4 hereof prior to sale by the clerk as aforesaid, then they shall pay said sum, together with any interest accruing thereon since the date of this final judgment and any additional costs incurred by the plaintiff subsequent to the date hereof, into the registry of this court, and if so paid then the clerk of this court shall not sell said real estate as herein provided. Such payment by said defendants shall satisfy this final judgment, but the plaintiff shall not be entitled to receive the proceeds of said payment until it has furnished the surety bond hereinbefore mentioned.

(12) This court reserves jurisdiction of this cause for the purpose of entering such future orders as may be required for the purpose of carrying out the terms and provisions herein contained.